12994

STATE v. GELLIS

(155 S. E., 849)

Charleston, 1930.

*Messrs. John I. Cosgrove* and *Sidney Rittenberg,* for appellants,

*Messrs. James Allen, Solicitor, Thomas P. Stoney* and *Benj. Alston Moore,* for respondent,

October 9, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendant Gellis was tried at the November, 1929, term of Court of General Sessions for Charleston County, upon an indictment charging him with obtaining property under false pretenses in violation of Section 64 of the Criminal Code of 1922. When the case was called for trial, the defendant made a motion to quash and at the same time filed a demurrer to the indictment, on the ground that it charged him with no offense under the laws of the State. The Court overruled both the motion and the demurrer, whereupon counsel for the defendant requested a stay of proceedings until the demurrer could be passed upon by the Supreme Court. This request was refused, as well as a motion for a directed verdict of not guilty, made at the close of the State's case. The defendant was convicted and sentenced to imprisonment for a period of three years and to pay a fine of $500. The case now comes to this Court on numerous assignments of error.

For consideration of the questions involved in the appeal, the assignments of error may be thus summarized: (1) Error in overruling the demurrer to the indictment. (2) Error in refusing a stay of proceedings after the demurrer had been overruled and notice of appeal given. (3) Error in the admission of evidence. (4) Error in refusing to direct a verdict of not guilty. (5) Error in refusing to give the defendant the opening and reply in argument. (6) Error in charging the jury.

1. Did the Court err in overruling the demurrer?

Section 64 of the Criminal Code of 1922 reads as follows:

"Any person who shall, by any false pretense or representation * * * obtain from any other person any chattel, money, valuable security, or other property, real or personal, with intent to cheat and defraud any person of the same, shall be guilty of a misdemeanor, and shall, on conviction, be sentenced to pay a fine not exceeding five hundred dollars, and undergo an imprisonment not exceeding three years. * * * "

The particular offense with which the defendant was charged is thus stated in the indictment:

"That Stanley Gellis, late of the county and State aforesaid, on the 12th day of January, in the year of our Lord one thousand nine hundred and twenty-eight, with force and arms, at Charleston Court House in the county and State aforesaid, devising and intending to cheat and defraud J. Louise Hill of her goods, money, chattels and property, unlawfully, knowingly and designedly did falsely pretend that certain stock in a company known as the Associated National Tobacco Company was of the value of fifteen dollars a share and selling on the market at that figure which said pretense the said Stanley Gellis did then and there well know to be false, by color and means of which said false pretense and pretenses, he the said Stanley Gellis, did then and there unlawfully, knowingly and designedly obtain from the said J. Louise Hill two hundred and sixteen shares, one

fifty-eight shares of the stock of General Electric Company, two hundred shares of Anaconda Copper Company stock, twenty shares of Greene Cananea stock; sixty-one shares of United Gas and Improvement Company stock, one hundred and six shares of Granby Consolidated Company stock, being then and there the property of the said J. Louise Hill of the value of forty-two thousand dollars, with intent to cheat and defraud the said J. Louise Hill to the great damage of the said J. Louise Hill against the form of the statute in such case made and provided, and against the peace and dignity of the State."

There can be no question as to the fundamental right of the defendant in any criminal case to be fully informed, by the indictment, of the nature and cause ·of the accusation against him.

In *State v. Powell*, 10 Rich., 373, the Court said:

"In all criminal proceedings the party charged should not be led blindfolded to the altar. He should know the crime he is called to answer, and it should be so definitely charged that he may know how to shape his defense. When once tried his acquittal or conviction should ensure his subsequent protection against a second proceeding for the same offense. Certainty is required, and this includes as well the matter charged as the manner of charging it."

With regard to the sufficiency of an indictment for the offense here charged, we find the following in 11 R. C. L., 857:

"An indictment for obtaining property by false pretenses is sufficient if the language used is such that it designates the person charged and indicates to him the crime of which he is accused. It must, however, have that degree of certainty and precision which will fully inform the accused of the special character of the charge against which he is called on to defend, and will enable the Court to determine whether the facts alleged on the face of the indictment are sufficient in the contemplation of law to constitute a crime, so that the

record may stand as a protection against further prosecution for the same alleged offense. It must aver all the material elements of the offense, and hence must show what the false pretenses were; that they were made or authorized by the defendant; that they were false and fraudulent, and deceived the prosecutor; and what was obtained by and under them; or, as differently expressed, it must set out the pretenses and the scienter, and that by means of the pretenses, which were false, the defrauded party was induced to part with the property described. Generally, it is sufficient to follow the language of the statute, without averring that the pretenses were feloniously made."

One of the specific grounds of objection made by the demurrer was that the indictment does not name the person to whom the alleged false representation was made. It is contended by the appellant that the "crime of false pretenses requires a false representation to be made to some one," and that "the naming of that some one in an indictment for false pretenses is an essential ingredient of the offense." The case of *State v. Johnston,* 149 S. C., 195, 146 S. E., 657, 660, recently decided by this Court, is cited as fully sustaining this view. It is seen, on examination of the indictment in that case, that it is not alleged, either expressly or by implication, to whom the false statements were made. Mr. Justice Blease, who wrote the opinion, had this to say:

"The serious objection to the indictment was the second, which challenged the instrument for failure to allege to whom the false statements were made. This should have been done, in our opinion.

"Time, as the Circuit Judge charged the jury, is not an element of the offense created by the statute. Neither is there any law which limits the time in which a prosecution for the offense may be instituted. The State, therefore, could show the making of the false statement alleged against the appellant at any time previous to the finding of the in-

dictment by the grand jury. In this respect the defendant is at considerable disadvantage. To go further and require him to defend himself on the charge of making a false statement to some undisclosed person would not preserve to him his right, as declared by the Constitution, to be fully 'informed' of the accusation against him. We do not even think an indictment that failed to disclose to whom the alleged false statement was made complied with the provisions of the Code of Criminal Procedure, which requires an indictment to be plain enough that the defendant may easily understand the nature of the offense charged against him."

While it is true that the Court held in the *Johnston case* that, in order to meet the requirements of the Constitution and the Criminal Code, the indictment should allege to whom the false statements were made, it did not hold that such knowledge may not be conveyed to the accused by necessary implication, to be gathered from a reading of the whole indictment, as well as by naming the person, in so many words, to whom such false representations were made. All that the Court held was that the indictment should disclose to the accused to whom the false statements were alleged to have been made; and it is clear that if such disclosure is made by unmistakable implication, the same result will be attained as if it were made by expressly naming such person.

In the case at bar, the indictment does not state, in so many words, that the alleged false representations were made to "J. Louise Hill," or to anyone else by name; but it unquestionably shows that they were made with the intent to defraud the prosecutrix, and that as a result the defendant obtained from her certain valuable property and she was thereby damaged. We think it is the obvious meaning of the language used that the person who suffered as a result of the false pretenses was the person to whom such pretenses were made. This is the only reasonable construction that can be placed upon the indictment.

Another objection made by the demurrer was that the indictment does not show in what particulars the pretenses were false. It was alleged that the defendant, with intent to cheat and defraud J. Louise Hill of her property, did knowingly and falsely pretend that "certain stock in a company known as Associated National Tobacco Company was of the value of fifteen dollars a share and selling on the market at that figure"; that he knew such pretense was false and, by color and means of it, did obtain from the said J. Louise Hill, valuable property to her great damage. We think that the allegations of the indictment can only mean that the stock of the tobacco company was of a lesser value and was selling at a smaller market figure than was represented by the defendant, for if the value of the stock was greater than $15 per share and it was selling on the market at a higher price than that, the prosecutrix could not have suffered a loss of her property as alleged in the indictment, as a result of the representations made by the defendant, even though they might be technically untrue.

What we have already said disposes of the objections that the indictment does not state facts sufficient to show in what manner the prosecutrix suffered loss, and that no causal connection between the alleged false pretenses and the alleged loss or damage to the prosecutrix is shown. It is alleged that the defendant made false pretenses as to the value of the stock of a certain tobacco company and by color or means of such false representations obtained the property of the prosceutrix to her damage in an amount named; the necessary conclusion is that the prosecutrix parted with her property in exchange for stock represented by the defendant to be of a certain value which it did not possess, and that such exchange resulted in the loss and damage complained of.

Reading the indictment as a whole, we think that the elements of the crime charged were alleged with sufficient particularity to put the defendant on notice

of what he would be called upon to answer. The Circuit Judge was correct in overruling the demurrer.

2. Was there error in refusing a stay of the trial after the demurrer had been overruled and notice of appeal given? The appellant complains that the Court's refusal of his motion for a stay of proceedings was a manifest abuse of discretion. We do not think so. Not to have ordered the case to trial, after demurrer had been overruled, would have entailed an unnecessary and unwarranted delay in the administration of justice. Besides, the defendant suffered no harm, as all questions raised by his demurrer were available to him upon appeal from the final judgment.

In *State v. Burbage*, 51 S. C., 284, 28 S. E., 937, 938, the Court said:

"It is a bad practice, and generally condemned, to hear appeals by piecemeal, especially in criminal cases; for it is destructive of the prompt administration of justice, which is so essential to the peace of society. Besides, it leads to an unnecessary consumption of the time of this Court, which could be much better employed than in considering or determining questions which may never become of any practical importance in a given case. If the defendant should be acquitted, then, of course, all the questions presented by the motion to quash the indictment and the so-called plea in abatement would lose all practical importance, and their consideration would become a work of supererogation. If, on the other hand, he should be convicted, we see no reason why all these questions could not be raised on appeal from the final judgment. But a still better reason may be given: To allow appeals to be heard from such preliminary rulings would enable a party charged with the most serious crime always to secure a continuance, when not otherwise entitled to it, by simply moving to quash the indictment, and, when his motion is overruled, give notice of appeal from such ruling, and thereby stop the trial, as was the case in the present instance."

III. Was there error in the admission of testimony?

Mrs. Hill testified that, prior to the visit of Gellis to Charleston, representations had been made to her over long-distance telephone from Harrington, Brainer & Company, of 25 Broad, New York City, regarding the value of the tobacco stock and the formation of a syndicate to buy up the entire issue, and that it was the defendant who spoke to her over the phone. In reply to a question of counsel whether these representations were also made by the defendant at her home in Charleston, she answered: "I think so, I can't remember the words, but he came to get the stock to purchase more stock and in the meantime I had been told that the syndicate was forming to buy up the stock." This testimony was objected to on the ground that it was not responsive to the issue made. The Court ruled that it was admisible for the reason that, as fraud was charged, the inquiry could take a much wider range than was usually allowed. There was no error in this ruling. The defendant was charged with fraud, and the testimony tended to show fraudulent intent on his part in preparing the mind of his intended victim, prior to his visit to Charleston, for a ready reception of the scheme by which he planned to defraud her.

She also testified that after the transaction with Gellis, she was called over long-distance telephone from Boston by a person whose voice she recognized as that of the defendant, and who made inquiry as to the price she would take for her stock, stating that he was authorized to purchase for a syndicate certain blocks of the stock, and mentioning more than she had; that he further stated to her that he would take her stock at $60 a share if she could furnish the blocks required; that he told her she could buy additonal stock at $15 a share and that (in view of what she could get for it) it would be to her advantage to buy; and that when asked by the witness why he did not do so himself, he replied that only stockholders could buy

the additional issue. This testimony was objected to on the ground that it was irrelevant; the objection was overruled. There was no error. The relevancy of testimony is a matter largely in the discretion of the trial Court and no abuse of discretion is here shown—the testimony, relating to a proposed immediate continuation of the stock transaction which had just been made, may well have had a bearing on the question of fraudulent intent in such transaction.

The prosecutrix further stated that after she discovered that something was wrong, she went to New York City and visited 25 Broad Street, the address given her by Gellis as that of Harrington, Brainer & Company, and found the office closed. As to what she then did, she testified: "I had the stock with me and I took it to the nearest broker, C. C. Carr & Co., and asked him if he would take care of it. I could not carry it around with me. I could find no quotations on it. *They said it was worthless.*" The admission of that portion of the testimony in italics was objected to by the defendant, but was allowed by the Court. The appellant complains that this was error.

While it is true that the evidence was hearsay and should not have been admitted, the error was harmless for the reason that there was ample competent testimony, undisputed, to establish the falsity of defendant's representations as to the value of the stock. It was testified by other witnesses that about the time of the alleged transaction between Mrs. Hill and the defendant, the stock in question was selling on the New York market for about $3 and that later there was no demand for it.

When Corson, a witness for the State, was on the stand, he testified that he was employed by the National Quotation Bureau, which put out a publication known as the *National Monthly Stock Summary;* that the information contained in this publication was received directly from the brokerage houses all over the United States, and that it was regarded as authentic and reflected the trend of the market; that the

practical use of the book was to get an idea of the values of any security and to locate where it might be bought or sold; that it quoted any security for which there was any market at all, and most all the quotations on all unliquidated securities; and that the stock of the Associated National Tobacco Company was listed in the book. When the witness was asked, however, what the first quotation on that stock was, the defendant objected on the ground that the book was not admissible as evidence of values for the reason that, this being a criminal case, the requirements for the admission of such evidence were stricter than in civil suits. The objection was overruled and the witness allowed to state from the book what the quotations on the stock of the National Tobacco Company were on November 9, 1927, and dates following that time, which showed that the quotations on January 1, 1928, were $3 bid, offered at $6; and on January 23, 1928, $3 bid, offered at $5.

The appellant complains of error on the ground that this testimony violated the confrontation clause of the Constitution (Article 1, § 18), and that the witness himself had never dealt in the stock as a broker or otherwise so as to lay the foundation for any opinion given by him as to its value.

The objections presented by appellant's exception were not made to the admission of the testimony in the Court below, but are raised here for the first time, and therefore they are not properly before this Court. But aside from this, the witness O'Kane, a broker, testified that he was familiar with the publication, and that it often formed the basis of trade; that he had dealt in the stock of the National Tobacco Company and knew of its value about the time of the alleged transaction between the prosecutrix and the defendant, and knew that the quotations on that stock, as listed in the publication, were correct. This testimony cured the error, if any, in allowing the witness, Corson, to read from that book the quotations on the tobacco stock, and satisfies the view of appellant that only one who

had dealt in the stock and knew about it could put the book in evidence.

IV. Did the Court err in overruling defendant's motion for a directed verdict?

The answer to this question requires an examination of the testimony, some of which has already been referred to. The prosecutrix and the defendant were the only ones present at the time of the alleged transaction involving the sale of the stock at the home of the former in Charleston. The defendant did not testify or offer any witness in his behalf. The prosecutrix testified that the first information she had regarding the stock of the tobacco company came through a publication called the *Financial Advisor,* which was sent to her by mail in the interest of Harrington, Brainer & Company, 25 Broad Street, New York City, and strongly recommended the purchase of the stock; that she also, on January 3, 1928, received a telegram, signed "Financial Advisor," urging her not to hesitate to purchase the stock "mentioned in our bulletin at present price of fifteen dollars a share"; that, on the strength of these recommendations, she purchased four hundred shares for which she paid $6,000; that she was later urged over the phone to purchase one hundred shares more at the same price and that she did so; that following the second purchase Harrington, Brainer & Company frequently called her over the phone, and that in these conversations the National publication was mentioned, and she was also told that there was an agent acting for a syndicate to buy up all that issue of the stock; that she was urged to buy more of the stock, but replied that she did not wish to make further purchases as she had no more money; that she was then asked whether she did not have some securities, and was told of the advantages of parting with them for the tobacco stock in view of the syndicate which was being formed to buy up that stock; that the same voice always spoke over the phone, and that it was the voice of the de-

fendant; that she was advised that Harrington, Brainer & Company were sending a person named Stanley Gellis down to see her, to which she objected; that on January 12, 1928, the defendant visited her at her home in Charleston, and that he then and there repeated to her the representations as to the value of this stock that had been frequently made to her over the phone by Harrington, Brainer & Company; that the representation made to her by him regarding the price of the stock was that it was $15 a share; that as a basis for that statement, he pointed to a quotation in a newspaper which he held in his hands, which the witness supposed to be the *New York Times;* that she did not see the quotation, but the defendant said that he was pointing to the quotation of the stock and that it was $15 a share, and that the stock was being sold in New York, as she understood; that by these representations he persuaded her to buy the Associated Tobacco stock at $15 a share and to give in exchange therefor her very valuable securities; that, later, when she found that something was wrong, she went to New York City to see about the matter, but could get no quotations on the stock. Corson and O'Kane, two witnesses for the State, both testified that about the time of the alleged transaction between Mrs. Hill and the defendant, the stock in question was quoted on the New York market at $3 bid and offered at $6.

The general rule is that if there is any evidence adduced by the State tending to prove the defendant's guilt, the case must be submitted to the jury. See *State v. Johnston,* 149 S. C., 195, 146 S. E., 657. There was some testimony tending to prove the charge as laid in the indictment, and the Court properly overruled the motion for a directed verdict.

V. Was there eror in refusing to give the defendant the opening and reply in argument?

Gellis did not take the stand, nor were any witnesses offered in his behalf. During cross examination of the prosecutrix, however, he introduced in evidence

certain letters, telegrams, etc., which passed between her and Harrington, Brainer & Company relative to the sale of the stock in question, upon her admission that they were genuine. At the close of the testimony, he moved the Court to be allowed the opening and reply in argument on the ground he had offered no witnesses. The State contended that the defendant, by his introduction of the documentary evidence, had lost his right to open and reply, and the trial Judge sustained that position.

The appellant complains that this was error, and cites *State v. Brisbane,* 2 Bay, 451, decided in 1802. In that case the Court held:

"The same rule ought to prevail in the Criminal Courts of judicature, which had been laid down in the Court of Common Pleas. That in all cases where a defendant called no witnesses, he should have the privilege of concluding to the jury."

In *State v. Huckie,* 22 S. C., 298, the Court had under consideration the question whether the State would be entitled to the reply in argument, where defendants' are jointly indicted and anyone of them introduces evidence. It referred to the holding in the *Brisbane case* that where the defendant calls no witnesses his counsel is entitled to conclude the argument to the jury, and said:

"But while this is the case, it appears that if any evidence is offered in defense, the general right of reply will not be transferred from the State to the defendant. * * * It follows that if appellant had been the only party charged, and he had offered no evidence, his counsel would have been entitled to the reply in argument."

In *State v. Garlington,* 90 S. C., 138, 72 S. E., 564, 566, the Court, in passing upon the question whether the defendant in a criminal case, who has a right to open and reply in argument, may waive either or both of those rights, said:

It may be true, furthermore, that the defendant in a criminal case, having the right to reply in argument by reason of

not introducing evidence, may decline to open in argument and still retain the right to make the closing argument to the jury, either upon the case in general or by way of reply to any contention on the part of the State."

It is evident from the more recent decisions of this Court that the rule is that if a defendant offers any evidence on trial of the case, the State is not deprived of its general right to the opening and concluding arguments. The defendant may introduce evidence either by offering witnesses in his behalf, or, as in the present case, by the introduction of documentary evidence without calling witnesses.

VI. Did the Court err in charging the jury?

What we have said in our consideration of the questions raised with regard to the validity of the indictment disposes of Exceptions 12, 13 and 14. With respect to Exception 15, when all that the Court said is considered, we do not think there was error in the charge, as complained of; but if it should be thought that we are wrong in this, the charge did no harm, for the reason that the undisputed evidence was that the alleged false pretenses were made by the defendant directly to the prosecutrix in conversations with her, either face to face or over the long-distance telephone.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE and CARTER, and MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON concur.

ORDER ON PETITION FOR RE-HEARING

PER CURIAM.

The appellant in this case has filed a petition asking for a rehearing. He argues that the Court, in its opinion heretofore filed, failed to consider subdivisions (c) and (d) of Exception 13, which alleged that the trial Judge charged on the facts "in violation of the constitutional inhibition," and invaded the province of the jury by indicating his "opinion or belief."

488

It is true, in disposing of this exception, the Court did not refer specifically to each of the several subdivisions, but gave to each of them the careful consideration it deserved, and what was said in the opinion was intended to dispose of the whole exception. However, the specific assignments of error made by the two subdivisions named are without merit. By the charge objected to, the trial Judge was merely—and correctly, as we held—instructing the jury as to the elements of the crime charged in the indictment and the degree of proof necessary for conviction. It does not appear that it was, in any way, a charge on the facts or an expression of "opinion or belief" on the part of the Court.

The other grounds set out in the petition, upon which also rehearing is sought, were carefully considered and disposed of by this Court in its opinion. At the earnest request of the petitioner, however, we have again given these questions most careful consideration and thought, but find no good reason, either in law or in fact, to change our conclusions.

The petition, therefore, is dismissed and the order staying the remittitur is revoked.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.