20383

The STATE, Respondent, v. Lee M. KAHAN, Appellant.

(233 S. E. (2d) 293)

*James I. Redfearn, Esq.,* of Chesterfield, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joseph R. Barker* and *Robert N. Wells, Jr., Asst. Attys. Gen.,* of Columbia, and *J. DuPre Miller, Sol.,* of Bennettsville, *for Respondent,*

March 15, 1977.

GREGORY, Justice:

Lee M. Kahan was indicted for the murder of his wife and appeals from a conviction of voluntary manslaughter. Finding no error in the trial, we affirm.

There were no admitted eyewitnesses to the shooting. Kahan testified that he and his wife were alone in their house when he heard a shot from her bedroom. He ran into the room and found her sitting on the bed with his .22 caliber pistol in her hand.

Kahan lists 13 exceptions, most of which center on the admissibility of testimony of the State's expert witness, Pattillo, a chemist employed by SLED. Pattillo testified about his examination of the nightgown Mrs. Kahan had been wearing at the time of her death. He found no gunpowder residue on the gown; he said, "this particular type of weapon [the .22 pistol] will tend to stop leaving gunpowder residue somewhere between the distance of approximately 18 and 24 inches away from the target."

Kahan contends that the chain of possession of the gown was not established and that Pattillo should not have been permitted to testify because the gown was not introduced as evidence. We find no merit to either of these contentions.

It is uncontroverted that Deputy Wilson personally received the gown in a plastic bag from the coroner at the hospital and delivered it to the Sheriff's office on December 24, 1974 and that he personally picked up the gown in a plastic bag from the Sheriff's office on January 2, 1975 for delivery to SLED and Agent Pattillo. He further testified that he believed the gown was kept in the evidence locker during this time span. While there was no testimony as to the care and handling of the plastic bag containing the gown during this time, such was not necessary to establish a chain of custody and would go only to the credibility of the evidence.

The testimony in regard to the chain of custody is clearly sufficient to meet the standards of *Benton v. Pellum,* 232 S. C. 26, 100 S. E. (2d) 534 (1957), which states:

*"While proof need not negative all possibility of tampering, People v. Riser,* 47 Cal. (2d) 566, 305 P. (2d) 1, it is generally held that the party offering such specimen is required to establish, *at least as far as practicable,* a complete chain of evidence, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed." 232 S. C. at 33, 100 S. E. (2d) at 537 (emphasis added).

*See also State v. Pollard,* 261 S. C. 389, 200 S. E. (2d) 233 (1973).

Agent Pattillo testified he performed the Walker residue test on the gown for the presence of gunpowder residue and none was found. The testimony of the coroner and Pattillo as to the presence of blood on the gown negates any possible prejudice to Kahan from Pattillo's testimony without the introduction of the gown as evidence.

Pattillo also conducted an out-of-court experiment during the course of the trial. He fired Kahan's pistol at various distances into a "test gown", made of similar material and of a similar weave pattern as the gown worn by the deceased. He found that the gun left a detectable gunpowder residue up to 24 inches, and that at 30 inches not a single particle of nitrite could be found. (He had first fired into both gowns to determine if the residue pattern on the test gown was approximately the same as that on the other gown.) Pattillo testified about his experiment.

Kahan asserts this testimony was inadmissible for the same reasons as he gives for the inadmissibility of the testimony on Mrs. Kahan's gown. We find no merit to these reasons. He further says that the conditions surrounding

Pattillo's experiment were dissimilar to those existing at the time of Mrs. Kahan's death. However, this Court has not required that conditions of an experiment be identical to those existing at the time of the controverted event; only that there be substantial similarity. *Weaks v. S. C. State Highway Department,* 250 S. C. 535, 159 S. E. (2d) 234 (1968). Such similarity was present here.

Kahan also contends it was error to permit Pattillo "to testify regarding out of court experiments based on previous testimony of prior witness." However, that testimony related to the path of the bullet through the victim's body and was not relevant or material to the results of the test gown experiment. Further, Pattillo testified that the angle at which he fired the gun (the objected-to portion of the experiment) was based on his examination of the gown worn by the deceased.

Kahan next assigns error in the solicitor's closing argument to the jury. The solicitor said (in untranscribed remarks) that the reason the gown of Mrs. Kahan was not introduced into evidence was because it was so bloody. We find no prejudicial error in this remark, as the presence of blood on the gown was fully supported by the testimony of the coroner and Pattillo.

The rule in this State for determining the propriety of a jury argument is stated in *State v. Pitts,* 256 S. C. 420, 428, 182 S. E. (2d) 738, 742 (1971) :

"The question of whether the argument by the solicitor was improper or prejudicial is, under our decisions, a matter addressed largely to the discretion of the trial judge, and his ruling will not be disturbed in the absence of a showing of an abuse of such discretion. *State v. Hutto,* 252 S. C. 36, 165 S. E. (2d) 72."

Also objected to is the judge's charge, in which he instructed the jury on the lesser included offense of voluntary manslaughter. The evidence in this case

was purely circumstantial. There was testimony that at a Christmas party several hours before the shooting Kahan and his wife had been arguing and Kahan drinking. It is only proper to not instruct voluntary manslaughter in a murder case when there appears no evidence whatsoever tending to show manslaughter. *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130 (1951); *See also State v. Norris,* 253 S. C. 31, 168 S. E. (2d) 564 (1969); *State v. Bealin,* 201 S. C. 490, 23 S. E. (2d) 746 (1943). We find no error in the charge.

Lastly, Kahan alleges error in the failure of the trial judge to direct a verdict of acquittal. He contends the evidence presented by the State was insufficient to support a conviction. It is well settled that in the consideration of a question of sufficiency of the evidence in a criminal case, the evidence must be viewed in the light most favorable to the State.

"In determining whether a motion should be granted for a directed verdict of not guilty it is well settled that the evidence, and inferences which reasonably can be drawn therefrom, must be viewed in its most favorable light for the State. . . It is not the function of the court to pass upon the weight of the evidence, but to determine its sufficiency to support the verdict, and where there is any evidence however slight on which the jury may justifiably find existence or nonexistence of material facts in issue, or if evidence is of such character that different conclusions as to such facts reasonably may be drawn therefrom, the issues will be submitted to the jury." *State v. Bell,* 263 S. C. 239, 246, 209 S. E. (2d) 890, 893 (1974).

In addition to the testimony of Agent Pattillo, the evidence was to the effect that Mrs. Kahan was alone with appellant in their home on the morning of December 24, 1974, at which time Mrs. Kahan was shot and killed by a single bullet wound in the chest. Appellant made a statement on the date of the shooting that his wife had shot

herself with a pistol while she was alone in the bedroom. However, the pistol used in the shooting was found in a closed cabinet in the kitchen. Finally, witnesses testified as to the threats and insults directed by Kahan toward the deceased at the Christmas party on the night preceding her death. The case was properly submitted to the jury.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.