23134

The STATE, Respondent v. Willie PRIESTER, Appellant.

(391 S.E. (2d) 227)

Supreme Court

*James H. Moss, W. Thomas Vernon* and *David Matthews,* of *Moss, Dore, Kuhn & McIntyre, P.A.,* Beaufort, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Amie L. Clifford,* of Columbia, and *Sol. Randolph Murdaugh, III,* Hampton, *for respondent.*

Heard Oct. 18, 1989.

Decided Jan. 22, 1990.

*Per Curiam:*

Appellant, Willie Priester (Priester), was convicted of felony driving under the influence (DUI) and sentenced to fifteen years. We reverse.

## FACTS

On August 26, 1987, Priester was involved in an automobile accident which resulted in the death of Betty Boisclair. At the scene, an EMT, Cathy McMillan, drew two blood samples from Priester. The blood samples were taped to Priester's I.V. bag and transported with him to the hospital, where they were given to the receiving nurse, Cathy Sharpe. Nurse Sharpe labeled the blood and placed it on the nurse's desk, where it was subsequently picked up by a lab technologist, Clarence Green.

Green performed a blood alcohol test which revealed a blood-alcohol content of .131 milligrams per deciliter. At trial, Green testified that anyone registering over .100 milligrams is considered intoxicated.

## ISSUES

Although several issues are raised, we address only

1. Whether the State sufficiently established the chain of custody of the blood samples.

2. Whether the Court erred in allowing witness Green's testimony.

## DISCUSSION

## I. CHAIN OF CUSTODY

Priester contends the State failed to sufficiently establish the chain of custody of his blood samples. We disagree.

Proof of chain of custody need not negate all possibility of tampering but must establish a complete chain of evidence, *as far as practicable. State v. Williams,* 297 S.C. 290, 376 S.E. (2d) 773 (1989); *State v. Kahan,* 268 S.C. 240, 233 S.E. (2d) 293 (1977).

Here, each person who handled the blood samples testified at trial. Technologist Green testified that the samples he picked up from the nurse's desk were identified by Nurse Sharpe as Priester's and were clearly labelled with his name. We hold that the chain of custody was sufficiently established.

## II. WITNESS GREEN

Priester next contends that technologist Green, was not qualified as an expert to testify that a person with a blood-alcohol reading in excess of .100 milligrams per deciliter is considered intoxicated. We agree.

In *State v. Carrigan,* 284 S.C. 610, 328 S.E. (2d) 119 (Ct. App. 1985), the Court of Appeals held that blood test results "should be accompanied by appropriate expert testimony interpreting them, since the presumptions provided by subsection (b) [the Implied Consent Law[1] for breathalyzers] would not apply."

The issue of what constitutes "appropriate expert testimony" interpreting blood test results has not been addressed by this Court. However, in *Tarrock v. City of Kingston,* 279 A.D. 693, 108 N.Y.S. (2d) 16 (1951), the New York Supreme Court, Appellate Division, held that testimony of a hemotologist as to a "recognized standard" by which intoxication is presumed from a blood-alcohol test was

---

[1] S.C. Code Ann. § 56-5-2950 (1976). Although this statute has since been amended to apply the presumptions to blood tests, the statute was not in effect at the time of Priester's accident. 1987 Act. No. 179 § 2.

properly excluded. As the hemotologist was not a physician or otherwise qualified from personal experience, he was incompetent to testify regarding the effect of the alcohol on Tarrock. Similarly, in *Groth v. DeGrandchamp*, 71 Mich. App. 439, 248 N W. (2d) 576 (1976), the Michigan Court of Appeals held that, although a witness for the State was properly qualified to conduct blood tests and determine their results, she "lacked the qualification necessary to permit her to testify as an expert on the effect of a given blood alcohol content on an individual . . ." 248 N.W. (2d) at 579.

We agree with the holdings in *Tarrock* and *Groth*. Here, although competent to conduct tests determining blood-alcohol *content*, Green admitted that he had no training whatsoever in determining the *effect* of alcohol upon the human system. Accordingly, Green's testimony on the issue of intoxication was inadmissible.

Reversed and remanded.