426 S.E.2d 814

**The STATE, Respondent,**

v.

**Louis WELLS, Appellant.**

**No. 1933.**

Court of Appeals of South Carolina.

Heard Oct. 14, 1992.

Decided Dec. 29, 1992.

Asst. Appellate Defender Wanda H. Haile, of the South Carolina Office of Appellate Defense, Columbia, for appellant.

Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr. and Norman Mark Rapoport, Columbia, and Sol. Wade S. Kolb, Jr., Sumter, for respondent.

CURETON, Judge:

The appellant, Louis Wells, was convicted of murder, assault and battery of a high and aggravated nature, and possession of a weapon during the commission of a violent crime. He appeals various evidentiary rulings and the jury charge. We affirm.

Viewing the evidence in the light most favorable to the State, Wells went to the home of Eunice Hart and Robert Whitaker (victim) during the early morning hours of November 10, 1990. Wells was well known to Hart. She allowed him to come inside the house and he asked her for a pint of wine. She did not have any wine but asked Wells for some money he owed her. At that point, Wells drew a knife and assaulted her. She called for the victim, who was asleep in the bedroom. She then fled from the house into the yard. Wells pursued her outside. The victim tried to come to the aid of Hart but Wells stabbed him numerous times. Wells further assaulted Hart and then ran away. The victim died at the scene from multiple stab wounds. A neighbor witnessed the events from her window but could not identify Wells because it was dark.

After the police were called, Hart identified Wells as her attacker and the police went to Wells' home. Wells denied involvement in the stabbings. He told the police he had visited two clubs that night but was at home and asleep when the attacks occurred. He consented to a search of his home. Clothing described by Hart was seized from his bedroom. Wells admitted wearing the clothes that night.

## I.

Wells argues the court erred in allowing the investigating officer to testify concerning a post arrest oral statement he made two days after the incident. The trial court held an *in camera* hearing and ruled the oral statement was voluntarily made pursuant to a *Miranda* warning and could be admitted although Wells had refused to sign a written statement at the time. The written statement was not admitted. We find no error.

During the *in camera* hearing, the investigating officer testified he had advised Wells of his *Miranda* rights and Wells

had indicated he understood them, after which Wells told the officer he had been to two clubs that night. This statement was essentially the same as that he made on the night of the arrest.[1] Wells did not sign a written statement. Wells also testified during the *in camera* hearing he was advised of and understood his *Miranda* rights and was not threatened or coerced when he made the statement.

The trial court ruled the oral statement was admissible. The test for admissibility of a statement is voluntariness. *State v. Washington*, 296 S.C. 54, 56, 370 S.E.2d 611, 612 (1988). The trial judge's determination of the voluntariness of the statement must be based upon the totality of the circumstances and may not be disturbed on appeal absent an abuse of discretion by the trial judge. *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 247 (1990).

Wells' refusal to sign a written statement is but one of the factors to consider in determining whether the statement was voluntary. Given Wells' testimony that he understood his rights and gave the oral statement of his own free will without threat or coercion, we find no abuse of discretion by the trial court in the admission of the statement.

## II.

Wells next contends the court erred in allowing testimony by the arresting officer in regards to a crack pipe and a towel found by the police during the search of his home. We find no error.

Wells gave the police permission to search when they came to his home. He does not contest his grant of permission on appeal. The crack pipe was found in the pocket of a pair of pants he admitted wearing that night. According to the police, the pants were wet and were found in a dresser drawer under clean clothes. The towel was found in the kitchen and was seized by the police because it appeared to have blood stains on it. However, the police admitted at trial there was no evidence of blood on the towel.

---

1. The voluntariness of the statement made on the night of the arrest was not challenged at trial.

Wells argues the court erred in allowing the admission of testimony regarding the crack pipe and towel because they were not connected to the assaults and had no bearing on the identity of the perpetrator. He argues the crack pipe may have allowed the jurors to impermissibly consider whether he had a propensity to engage in criminal activities.

We find no merit to these contentions. Wells could not have been prejudiced by the admission of the crack pipe because he readily admitted at trial he was "good and high" after consuming twelve beers and smoking two pieces of crack cocaine the night of the murder. *State v. Robinson,* 305 S.C. 469, 476, 409 S.E.2d 404, 409 (1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992) (although letter should have been suppressed, defendant was not prejudiced, because victim testified to same effect as letter on direct examination). Likewise, the introduction of the towel seized from Wells' home cannot be considered prejudicial error where there was nothing about the towel that incriminated Wells.

### III.

During trial, Wells' attorney objected when the solicitor asked him if he knew of any reason why Hart would come into the courtroom and accuse him of the murder. The trial judge overruled the objection. We discern no reversible error. While it is improper for the solicitor to "ask whether or not another witness has told the truth, because to do so would force such witness to attack the veracity of the other witness." *State v. Outen,* 237 S.C. 514, 527, 118 S.E.2d 175, 181 (1961), *cert. denied,* 366 U.S. 977, 81 S.Ct. 1948, 6 L.Ed.2d 1266 (1961), *Outen* does not apply here. Taken in proper context, we cannot say the solicitor sought to force Wells to attack the veracity of Hart. The focus of the solicitor's questioning was to uncover any bias by Hart, not to encourage Wells to state Hart was lying. Finally, in view of the overwhelming evidence of guilt, we find no prejudice in the admission beyond a reasonable doubt. *Thrift v. State,* 302 S.C. 535, 538, 397 S.E.2d 523, 525 (1990).

## IV.

During a consensual search of Wells' residence, the clothing he wore on the night of the killing was seized. The seizing officer testified he placed the clothes in a plastic bag and delivered the bag to a SLED agent. The SLED agent took the bag to SLED's central evidence holding room in Columbia. The agent picked the bag up from the holding room but could not testify to the handling of the bag while it was there. Appellant made a general objection to the chain of custody. We find no error. The admission of evidence is discretionary with the trial judge. *State v. Williams*, 297 S.C. 290, 293, 376 S.E.2d 773, 774 (1989). The record does not reflect the results of any tests performed by SLED so as to make chain of custody issues important to the validity of the test results. Wells identified the clothes as his at trial. Any defects in the chain of custody would only go to the weight or credibility of the evidence, not to its admissibility. Additionally, no blood from Hart or the victim was found on the clothes. *State v. Kahan*, 268 S.C. 240, 244, 233 S.E.2d 293, 294 (1977). We find no prejudicial error.

The court also admitted into evidence the blood-stained clothing of the victim. Appellant objected to the admission based on the chain of custody. The forensic pathologist who performed the autopsy on the victim testified he removed the victim's clothes and sealed them in a plastic container. He delivered the sealed container to a representative of the sheriff's department. Officer Grayson from the sheriff's department testified he picked the container up from the autopsy office, took it to SLED's evidence room, where a serologist examined the clothes, and returned the container to the evidence room. Grayson picked the clothes up from the evidence room and maintained custody and control until trial. He further testified the plastic container appeared to be the same container that was present in the courtroom at trial.

Wells objected to admission of the clothes on the ground Grayson could not identify the party from whom he received the clothes at the autopsy office. We find no error. "Proof of chain of custody need not negate all possibility of tampering but must establish a complete chain of evidence, *as far as practicable.*" *State v. Priester*, 301 S.C. 165, 167, 391

S.E.2d 227, 228 (1990) (emphasis added). We hold the chain of custody of the clothes was sufficiently established. Moreover, the condition of the clothes had already been described in testimony. There could be no prejudice in their admission. *See State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992). Finally, the chain of custody issue goes only to the credibility of the evidence. *Kahan,* 268 S.C. at 244, 233 S.E.2d at 294.

## V.

■■■■■■■ A photograph of the victim's body was taken by officer Grayson before the body was removed from the hedge where the victim had died. The court admitted the photograph into evidence. The State asserts the photograph was necessary to depict the crime scene. Wells objected on the ground that because the stabbing and the position of the body were not contested, the prejudice of·such a graphic photograph outweighed any probative value. Although it is permissible to use photographs to corroborate other evidence, photographs calculated to arouse the sympathies and prejudices of the jury are to be excluded if they are irrelevant or unnecessary to the issues at trial. *State v. Middleton,* 288 S.C. 21, 24, 339 S.E.2d 692, 693 (1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988).

In view of an abundance of testimony and several other photographs depicting the crime scene, we find it difficult to understand how the questioned photograph was necessary to prove the crime scene. We note, however, that we are unable to judge the offending photograph because it has not been made an exhibit on appeal. We hold that in light of overwhelming evidence of the guilt of Wells, the admission of the photograph did not prejudice his right to a fair trial guaranteed under the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the South Carolina Constitution.

## VI.

■■■■■■■ Finally, Wells claims error in the failure of the trial court to charge involuntary manslaughter. We find no error. It is well settled that the law to be charged is

determined from the evidence presented at trial. *Frasier v. State,* 306 S.C. 158, 410 S.E.2d 572, 574 (1991). Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon a sufficient legal provocation. *State v. Linder,* 276 S.C. 304, 307, 278 S.E.2d 335, 337 (1981). A charge of a lesser included offense is properly refused where there is no evidence tending to show the defendant is guilty of the lesser offense. *Casey v. State,* 305 S.C. 445, 409 S.E.2d 391, 392 (1991).

The record in this case is devoid of evidence of sufficient legal provocation. Wells awoke Hart in the middle of the night and requested a pint of wine. When Hart refused and reminded him that he owed her money, Wells began stabbing her. Hart yelled to the victim for help and ran into the yard. Wells caught up with her in the yard, knocked her to the ground, and continued to stab her. At this point the victim came out of the house to rescue Hart and apparently attempted to hit Wells with a "hammer or something". He missed and fell to the ground.[2] Wells then stabbed the victim eighteen times while he was on the ground pleading for his life.

Wells argues that Hart's refusal to give him wine and Hart's subsequent request for money from him provoked his assault on her, and provides the basis for the jury to have found an absence of malice in the killing of the victim. We hold as a matter of law the actions of Hart do not amount to sufficient legal provocation as to warrant a charge of manslaughter. It is well settled that words alone will not constitute the legal provocation necessary to reduce a killing from murder to manslaughter where death is caused by a deadly weapon. *State v. Gardner,* 219 S.C. 97, 104, 64 S.E.2d 130, 134 (1951); *accord State v. Plemmons,* 286 S.C. 78, 81, 332 S.E.2d 765, 767 (1985). Because the record contains no evidence Wells committed the killing in sudden heat of passion upon sufficient legal provocation, the trial judge properly refused to instruct the jury on the law of voluntary manslaughter. *Gardner* at 104, 645 S.E.2d at 134.

---

2. Appellant does not argue that the victim's attempt to hit him amounts to sufficient provocation.

Accordingly, the order of the trial court is affirmed.

AFFIRMED.

BELL, J., and BAROODY, J., concur.