760 S.E.2d 802

The STATE, Respondent,

v.

Bruce HILL, Appellant.

Appellate Case No. 2011–199807.

No. 27411.

Supreme Court of South Carolina.

Heard Feb. 5, 2014.

Decided July 9, 2014.

Jonathan Micah Hiller, of Hiller & Hiller, PA, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General J. Anthony Mabry, all of Columbia, Solicitor Jimmy A. Richardson, II, of Conway, all for Respondent.

Justice PLEICONES.

Bruce Hill (Appellant) challenges two evidentiary rulings by the circuit court and argues that his rights under the Interstate Agreement on Detainers Act (IAD) were violated. We affirm.

## FACTS

Appellant was convicted of two murders and first-degree burglary, arising from a home invasion and double homicide in Horry County on the night of April 11, 2005. He received concurrent life sentences for the murders and a concurrent thirty-year sentence for the burglary.

Prior to Appellant's trial, another individual, Richard Gagnon, was tried and convicted of these murders. During Gagnon's trial, the State maintained that there were two perpetrators involved, as there was blood at the scene that could not belong to either victim or to Gagnon.[1]

Four fresh blood droplets were collected from the home where the murders occurred. From these blood droplets, the South Carolina Law Enforcement Division (SLED) developed

---

1. The record reflects that Gagnon was granted a new trial after Appellant's conviction.

a DNA profile. The profile did not match either of the victims or Gagnon's, but SLED was able to determine the blood belonged to one person. SLED entered the profile of the unknown individual into the CODIS [2] national data base.

Approximately four years after the murders, the Horry County Police Department (HCPD) was notified in a letter from SLED of a CODIS match for the unknown individual's blood found at the crime scene.[3] The DNA matched Appellant's, who, at that time, was incarcerated in Tennessee. Appellant's DNA had been placed into the CODIS database by the Tennessee Department of Corrections.

HCPD agents travelled to Tennessee to meet with Appellant. These agents obtained a *Schmerber*[4] order from a Tennessee court, and performed a buccal swab [5] on Appellant for further DNA comparison. However, the investigators who obtained this order subsequently left HCPD, and the evidence of the swab was lost.

Arrest warrants were issued charging Appellant with burglary and murder. On August 26, 2010, pursuant to the IAD,[6] Appellant requested the final deposition of the charges pending against him in South Carolina. The solicitor's office and the clerk of court acknowledged receipt of Appellant's request on September 3, 2010, which triggered the IAD 180–day clock to bring trial.[7]

Appellant arrived in South Carolina on October 21, 2010. On March 1, 2011, the last day of the 180–day IAD limit, a

---

2. CODIS stands for Combined DNA Information System. It is a national database shared by law enforcement offices to assist with criminal investigations.

3. This letter was published to the jury over the objection of Appellant. Its admission is one of the bases of this Appeal.

4. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

5. A buccal swab is a method of obtaining DNA by swabbing the inside of the subject's mouth.

6. S.C.Code Ann. §§ 17–11–10 *et seq.* (2003).

7. Under the IAD, once the receiving jurisdiction acknowledges receipt of the prisoner's request for disposition, the receiving jurisdiction has

hearing on the State's motion for a six-month continuance was held. Appellant opposed the continuance arguing that the State did not meet its burden for obtaining a continuance under the IAD. The circuit court disagreed with Appellant and ruled that there was good cause for granting the State's request. In addition to granting a continuance, the court ordered that a *Schmerber* hearing be conducted the next week.[8] Thereafter, Appellant moved for a continuance, and on June 16, 2011, a three month continuance was granted.[9]

The final pretrial hearing was held on September 1, 2011. The circuit court took up several evidentiary matters which form two of the bases for this appeal. First, the court ruled that neither the State nor Appellant could make any reference to Gagnon's conviction, as it was irrelevant to the determination of Appellant's guilt. Second, the circuit court denied Appellant's motion to suppress any mention of Appellant being in the CODIS database. While ruling that it would not be permissible for the State to discuss why Appellant was in the database, i.e. the Tennessee conviction, the court allowed the State to present background information regarding the CODIS database and the match to Appellant. The circuit court reasoned it was relevant to explain the gap in time between the murders and the arrest. Appellant's trial began on September 12, 2011. He was convicted on all counts, and this appeal followed.

## DISCUSSION

Appellant raises three issues in this appeal. First, he challenges the circuit court's suppression of evidence regard-

---

180 days to bring the prisoner to trial, unless a proper continuance is granted by a court of competent jurisdiction. S.C.Code Ann. § 17–11–10 Art. III (2003). Otherwise, the court will dismiss the charges. *See State v. Holbrook*, 274 S.C. 4, 260 S.E.2d 181 (1979). (holding that the time provisions of the IAD are mandatory and violation of them requires dismissal).

8. The court ultimately issued a *Schmerber* order, and the results confirmed the CODIS match to Appellant.

9. The State's six month continuance would have ended on September 1, 2011 approximately two weeks before Appellant's requested continuance would end.

ing the convictions of Richard Gagnon, the man who was tried and convicted of these murders before Appellant's DNA was linked to these crimes. Second, Appellant challenges the admission of a letter containing a reference to Appellant's DNA being in the CODIS database. Finally, Appellant argues his rights under the IAD were violated by the circuit court's grant of a continuance to the State in March 2011.

### 1. Did the circuit court err when it prohibited any mention of the prior conviction of Richard Gagnon?

■ Appellant contends the circuit court erred in holding that evidence of Gagnon's convictions was irrelevant. Appellant argues that he should have been allowed to present testimony or evidence regarding Gagnon's involvement in and conviction of these same crimes. Appellant contends he was prejudiced because he was denied the opportunity to show the State's inability to connect him to Gagnon. We disagree.

■ The admission of evidence is within the discretion of the trial court and will not be reversed absent a prejudicial abuse of discretion. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002).

Appellant misconstrued the circuit court's ruling, and as a result failed to present any evidence of Gagnon's third party guilt. Consequently, he is unable to show prejudice from the court's suppression of Gagnon's convictions.

The circuit court's ruling regarding the admissibility of Gagnon's conviction was:

I will allow you to examine the witnesses about whether somebody else is present, there's somebody else involved in the matter, what the evidence shows, but I will not allow you to bring up that some other person has been convicted, because that would, in the Court's estimation, lessen the jury's obligation, and lessen in their minds their responsibility to treat this matter separately ...

The court's ruling permitted evidence that Gagnon had been *involved* in the crimes but not that he had been *convicted* of these crimes. The court did not prevent Appellant from presenting evidence that Gagnon committed these crimes, or

evidence that both law enforcement and the solicitor had investigated, arrested, and tried Gagnon.

From Appellant's arguments, it appears he understood the court's ruling as preventing him from even mentioning Gagnon or suggesting that he was involved in these crimes.[10] As a result of this misunderstanding, Appellant never presented evidence, drew out on cross, or argued that someone else committed this crime. Appellant could have presented evidence to this effect, so we disagree with Appellant's contention that he was prejudiced by being denied the opportunity to show a lack of connection between him and Gagnon.

In any case, Gagnon's *convictions* were irrelevant to Appellant's guilt or innocence, and thus, the circuit court did not err in refusing to allow Appellant to present the evidence.

Traditionally, our courts have held that the guilty pleas or the acquittal of a codefendant are irrelevant to the defendant's guilt or innocence. *State v. Moore,* 337 S.C. 104, 522 S.E.2d 354 (Ct.App.1999) (holding that co-defendants' guilty pleas were not admissible); *State v. Brown,* 306 S.C. 448, 412 S.E.2d 440 (Ct.App.1991) (holding that admission of codefendant's guilty plea was irrelevant and therefore inadmissible). While Gagnon was not a co-defendant, the disposition of another individual's charges for the same crimes the defendant is on trial for is irrelevant to the defendant's guilt or innocence. While Appellant was entitled to introduce evidence of third-party guilt and perhaps would have been able to introduce evidence that solicitors had successfully obtained indictments for Gagnon, a jury's *verdict* is not relevant to Appellant's guilt. Therefore, the circuit court did not err in refusing to allow evidence of Gagnon's convictions.

### 2. Did the circuit court err in admitting a letter from SLED to the HCPD which identified the CODIS database?

■ Appellant contends the circuit court erred when it admitted a SLED letter into evidence because the letter implicitly referenced Appellant's criminal record and therefore

---

**10.** For example, Appellant's brief states, "[h]ad Appellant been permitted to explore Richard Gagnon's involvement in the crime, the State would have been forced to focus on the full picture...."

highly prejudiced Appellant. While we agree the admission of the letter was error, we hold that this error does not warrant reversal of Appellant's convictions.

The circuit court ruled that the State was allowed to go into background information regarding the CODIS database to explain the delay between the 2005 crime and Appellant's 2009 arrest. Additionally, the court clarified that the State would not be allowed to elicit testimony as to how or why Appellant's DNA was in the database. Appellant does not take issue on appeal with any evidence presented under these rulings, beyond the publication of the letter to the jury. For example, there was testimony regarding the CODIS database and how law enforcement agencies share it for investigative purposes. Additionally, there was testimony that there was a hit generated on the CODIS database from an evidence sample in this case. However, the only error that Appellant contends the circuit court committed is in allowing the letter to be published to the jury as follows:

Dear Neil Livingston, the short tandem repeat, STRPCR DNA profile developed from item 19 was compared to the Combined [sic] DNA Index System, CODIS. This profile matches the STRPCR DNA profile developed from Bruce Antwain Hill. This information is provided for investigative purposes only. If the suspect is charged, an additional biological specimen must be submitted for court purposes. This search was conducted by Lieutenant David McClure with the South Carolina Law Enforcement Division

The admission of this letter will only constitute reversible error if it was a prejudicial abuse of discretion. *State v. Clasby*, 385 S.C. 148, 682 S.E.2d 892 (2009). While we do not condone the publishing of this letter to the jury, its admission does not amount to reversible error. The evidence contained in this letter was merely cumulative to other evidence of Appellant's DNA being in the CODIS database. Accordingly, we find that the publication of this letter was harmless in light of the other evidence which was admitted without objection.

Moreover, the State never tried to introduce evidence why Appellant's DNA was in the database, and there was no reference to nor indication of any previous crime Appellant committed. The most that can be said about this letter is that

it could have created an inference in a juror's mind that Appellant had a criminal history. This Court has held that such a speculative inference does not amount to prejudicial error. *See State v. Council,* 335 S.C. 1, 13, 515 S.E.2d 508, 514 (1999) (noting that an inadvertent vague reference to defendant's prior record will not amount to prejudicial error). Thus, the circuit court's admission of this letter, while error, does not entitle Appellant to reversal of his convictions.

### 3. Did the circuit court err in granting the State a six-month continuance under the IAD?

Appellant argues that the circuit court's grant of a six-month continuance to the State violated the IAD. We disagree.

■ The IAD is a compact enabling participating states to obtain custody of prisoners incarcerated in other participating jurisdictions and bring those prisoners to trial. *Reed v. Farley,* 512 U.S. 339, 340, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). The central purpose of the IAD is to allow participating states to uniformly and expeditiously dispose of charges pending against prisoners held out of state. S.C.Code Ann. § 17–11–10 (2003); *State v. Adams,* 354 S.C. 361, 370, 580 S.E.2d 785, 790 (Ct.App.2003). At issue here is Article III, which provides for the resolution of detainers based on untried indictments or complaints against a prisoner. Article III was triggered by Appellant's filing a request for a "final disposition," and under the IAD, that request requires that Appellant be tried within 180–days unless a proper continuance is granted. § 17–11–10.

Appellant argues that the State's continuance was not proper under Article III, which in relevant part provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment

and his request for a final disposition to be made of the indictment, information or complaint; provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance ... S.C.Code Ann. § 17–11–10 (2003).

Appellant contends that the circuit court erred in granting the State a continuance on March 1, 2011, the 180th and last day before the limit expired because the State failed to show "good cause," and the continuance was neither "necessary" nor "reasonable." Appellant contends that this late grant of continuance was improper, and therefore, he is entitled to dismissal of all charges. We disagree.

 This Court has not addressed the standard of review for determining whether an IAD continuance was granted on "good cause." In South Carolina "[t]he grant or denial of a continuance is within the sound discretion of the trial judge and is reviewable on appeal only when an abuse of discretion appears from the record." *Plyler v. Burns*, 373 S.C. 637, 650, 647 S.E.2d 188, 195 (2007). We see no reason for this to change in the context of the IAD. Thus, we will reverse a circuit court's decision to grant a continuance under the IAD only when it amounts to an abuse of discretion.

 In this case, the State presented multiple reasons why a continuance was needed. These included: the complexity of the case, the special preparations required to try a case of this magnitude, i.e. a double murder and a burglary in the first-degree, and the need for a *Schmerber* hearing to be conducted.

Appellant argues that these reasons are insufficient to satisfy the "good cause" requirement for a continuance under Art. III of the IAD. We disagree.

At the hearing, the judge acknowledged that he was very familiar with the complexities of this case, since he was the trial judge for the Gagnon trial, and that he believed this case, like the Gagnon case, would be an extremely complicated proceeding. We find this statement supports the State's position that this trial was going to be a complex and intensive trial. Further, this was a double homicide, and other courts

have considered the magnitude of the crime in determining whether there was good cause for delay. *See State v. Aguero,* 791 N.W.2d 1, 7 (N.D.2010) (in the context of an IAD continuance, "[in] considering the length of time of the delay, we have said, [t]he allowable delay for a minor street crime is considerably less than that for a more serious and complex charge.") (citations and quotations omitted).

Further, while the State is at least partially at fault for the delay in seeking the new *Schmerber* hearing, it is undeniable that a *Schmerber* hearing was required, as this case depended on matching Appellant's DNA with the DNA found at the scene. Accordingly, with the complexity of this case and the need for a *Schmerber* hearing, we hold that the decision to grant a continuance did not amount to a prejudicial abuse of discretion.

**AFFIRMED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.