LOCKEMY, C.J.:
**503 James Patterson appeals his convictions of armed robbery, grand larceny, and possession of a weapon during the commission of a violent crime, arguing the trial court erred in (1) admitting DNA evidence that was not authenticated through proper chain of custody testimony, (2) admitting DNA evidence that constituted improper evidence of a prior bad act, and (3) indicating to the jury during opening statements that a trial was "a search for the truth." We affirm.
FACTS
On the afternoon of May 9, 2012, law enforcement responded to a reported armed robbery at the K&M Jewelry Store in West Columbia. According to witnesses, a man wearing a dark suit, sunglasses, and a dark fedora entered the store and pointed a handgun at the manager, Frank Mancine. The man then proceeded to gather various items of jewelry before Mancine pulled out a concealed pistol and attempted to shoot him. Mancine's gun jammed, and the man ran outside, where his hat fell to the sidewalk. Mancine followed the man to a nearby parking lot and watched him climb into the driver's seat of a light-colored van. As the van sped away, Mancine again fired his pistol, this time hitting the van's rear hatch window.
Following an initial investigation, the West Columbia Police Department (WCPD) transported the fedora found at the crime scene to the South Carolina Law Enforcement Division (SLED) for forensic analysis. SLED subsequently collected a DNA sample from the fedora; from this sample SLED developed a DNA profile that it then entered into CODIS[1] , a national DNA database for law enforcement. Based on an existing DNA profile within the CODIS system, the search **504 identified James Patterson as matching the DNA sample taken off the hat.
SLED notified the WCPD, who then created a photographic lineup containing pictures of Patterson and four other individuals. An investigator presented the lineup to Mancine and another witness; Mancine identified Patterson as the man from the jewelry store, although the other witness could not. Later that day, the WCPD obtained a search warrant for Patterson's vehicle, which they had located in the impound lot of a towing company. The vehicle matched the description of *220 the van seen fleeing the jewelry store, and appeared to have a newly replaced rear hatch window as well as a puncture in its interior.
Patterson was subsequently arrested in connection with the armed robbery. Following his arrest, investigators collected a separate DNA sample directly from Patterson, which they tested and matched with the DNA profile taken off the fedora found at the crime scene. Based on the match, the State indicted Patterson for armed robbery, grand larceny, and possession of a weapon during the commission of a violent crime.
At the start of Patterson's trial, the trial court made the following preliminary comment to the jury:
It's a fundamental part of our democracy in a search for the truth in an effort to make sure that justice is done between the parties before the court. Searching for the truth and making sure that justice is done is often a slow, deliberate and repetitive process, the opposite of what you might have seen on television or in the movies or read in books. This courtroom is a place of honor dedicated to the protection and preservation of citizens' rights through what many have called the greatest justice system ever created.
The attorneys appearing before you are advocates for the parties they represent, but first and foremost they are officers of this court, sworn to uphold the integrity and fairness of our judicial system and to help you in a search for the truth .
(emphasis added). Patterson objected, arguing these remarks were prejudicial in that they impermissibly shifted the burden **505 of proof away from the State. The trial court overruled the objection.
During trial, the State presented testimony from an eye witness who confirmed seeing a man matching Patterson's description enter and leave the jewelry store. Mancine also testified regarding his recollection of the events, which was corroborated by surveillance footage from the store's internal camera. In addition, the State introduced testimony regarding Patterson's purchase of the van, the subsequent replacement of the rear hatch window, and the puncture in the van's interior. Finally, the State sought to introduce testimony regarding the DNA evidence that matched Patterson to the fedora, including testimony regarding the DNA database search.
First, the State presented evidence establishing DNA samples were collected from the fedora recovered at the scene and also from Patterson following his arrest.[2] Maryann Boehm was qualified as an expert witness in the fields of DNA analysis and statistical calculations. Boehm discussed the unique nature of DNA and the process for extracting, preserving, and using it for identification. She explained she developed a DNA profile for the suspect after taking a buccal swab of the inside of the fedora then locating and extracting a DNA sample. Boehm said she tested the DNA profile from the buccal swab of the hat against a DNA sample taken directly off Patterson following his arrest, resulting in an identification.[3] The buccal swab was marked and identified at trial with its assigned ID number: L12-06246.
The State then attempted to call SLED Agent Rhonda Fields to testify as to the identification of Patterson through the DNA database search; however, Patterson objected on the basis that Lieutenant David McClure, not Agent Fields, had conducted the database search that matched Patterson to the DNA from the fedora.[4] Patterson also argued the State had **506 not established the chain of custody for the DNA profile that was already contained in the DNA database. The trial court allowed the State to proffer the testimony outside the presence of the jury prior to ruling on its admissibility.
During the proffer, Agent Fields testified she was employed in the DNA database unit *221 at SLED and was involved in reviewing the information from the database search that identified Patterson. Agent Fields explained that once a match is identified, SLED goes through a "confirmation process" to "ensure that the original analysis was performed properly and that the same results are generated upon reanalysis." Agent Fields stated each individual DNA profile is given a separate ID number, Patterson's being SC00499452. Furthermore, each DNA match is given an identification number attributed to the search, which for Patterson's match was SA0000077927.
Agent Fields testified she personally reanalyzed the data after Lieutenant McClure conducted his search, and she confirmed the DNA match with Patterson's profile in the database. Agent Fields conceded, however, that she did not have the complete chain of custody for the DNA sample already in the DNA database. But in explaining how the DNA database gathers information, Agent Fields proffered for the trial court outside the jury's presence that the DNA sample was usually taken at the time an individual was arrested and that SLED has a tracking system that shows when a sample was collected for the database. Following the proffer, the trial court found the State had sufficiently authenticated the DNA sample and that Agent Fields could testify regarding the DNA database search.
In addition, Patterson objected to the DNA database testimony on the grounds it constituted evidence of a prior bad act under Rule 404(b), SCRE. Specifically, Patterson argued the evidence implied he had a prior record because that would be the only reason his DNA would be in a database in the first place.[5] The trial court overruled the objection, finding the inclusion of DNA in a database was not indicative of a prior record as DNA can be collected for a variety of reasons and from various sources.
**507 At the conclusion of the trial, the jury convicted Patterson as indicted. The trial court sentenced Patterson to an aggregate term of twenty years' imprisonment. This appeal followed.
STANDARD OF REVIEW
"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." State v. Pagan , 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." Id .
LAW/ANALYSIS
I. DNA Chain of Custody and Authentication
Patterson argues the trial court erred in admitting testimony that his DNA was contained in a DNA database because the State failed to authenticate and establish the chain of custody for the DNA samples used in the match. We disagree.
"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), SCRE. That requirement can be satisfied in a number of ways, including through testimony by a witness with knowledge "that a matter is what it is claimed to be"; comparison by an expert witness "with specimens which have been authenticated"; by evidence of "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Rule 901(b)(1), (3), (4), SCRE. "The ultimate goal of chain of custody requirements is simply to ensure that the item is what it is purported to be." State v. Hatcher , 392 S.C. 86, 95, 708 S.E.2d 750, 755 (2011).
In the case at bar, the DNA evidence was authenticated through the testimony establishing the DNA profile developed from the fedora matched both the DNA profile attributed to Patterson in the database and the DNA profile developed from Patterson after he was arrested. First, the State established the authenticity of the DNA profile that *222 SLED entered **508 into the database through the testimony of Boehm and Fields. Boehm had first-hand knowledge of the procedures that went into collecting, storing, maintaining, and testing the DNA profile, while Fields personally reviewed and verified the results of the DNA profile match. See Rule 901(b)(1), SCRE (allowing authentication through testimony by a witness with knowledge that a matter is what it is claimed to be). Boehm also testified regarding the distinctive characteristics of each DNA strand and the specific ID numbers assigned to the ones tested here. See Rule 901(b)(4), SCRE (providing evidence can be authenticated through proof of distinctive characteristics).
Moreover, the identity of each person that handled the DNA sample was conclusively established, and there was no evidence presented indicating the sample was tampered with. See State v. Taylor , 360 S.C. 18, 25, 598 S.E.2d 735, 738 (Ct. App. 2004) ("[I]f the identity of each person in the chain handling the evidence is established, and the manner of handling is reasonably demonstrated, no abuse of discretion is shown in the admission, absent proof of tampering, bad faith, or ill-motive."). Minor discrepancies in the chain of custody implicates the credibility of the evidence, but does not render the evidence inadmissible. See id . at 24-25, 598 S.E.2d at 738 ; State v. Smith , 326 S.C. 39, 41-42, 482 S.E.2d 777, 779 (1997) (affirming admissibility of blood tests even though the arresting officer stored the blood sample in his home refrigerator prior to testing, noting that there was no evidence of tampering); State v. Kahan , 268 S.C. 240, 244, 233 S.E.2d 293, 294 (1977) (ruling the ballistics test results of a nightgown worn by the deceased and placed in the evidence locker in a plastic bag were admissible even though there was no testimony as to the care and handling of the plastic bag containing the gown during the time it was in the evidence locker). Therefore, we find the testimony of Lieutenant McClure was not necessary to establish the authenticity of the match that first identified Patterson as a suspect.
Additionally, although a perfect chain of custody was not shown for the DNA evidence that was already contained in the CODIS database, we believe the authenticity of the DNA results were nevertheless established through the independent testing of Patterson's DNA profile. Boehm was qualified as an expert in DNA analysis and she testified she matched the **509 DNA profile taken off Patterson after his arrest with the DNA profile taken off the fedora found at the crime scene. Both of these samples were properly authenticated at trial and are not challenged on appeal. See Rule 901(b)(3), SCRE (stating authentication requirement is satisfied through comparison by expert witness with specimens that have already been authenticated). Accordingly, we find no abuse of discretion and affirm as to this issue.
II. Evidence of a Prior Bad Act
Next, Patterson argues the trial court erred in admitting testimony regarding the DNA database search because it implied Patterson had a prior criminal record in violation of Rule 404(b), SCRE. See Pagan , 369 S.C. at 211, 631 S.E.2d at 267 (stating under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is generally not admissible to prove the defendant's guilt for the crime charged"). Relying on our supreme court's decision in State v. Hill , 409 S.C. 50, 760 S.E.2d 802 (2014), Paterson asserts the State's reference to the database was highly prejudicial and outweighed any probative value. We disagree.
In State v. Hill , the court held that the admission of a law enforcement letter in which references were made to the CODIS database, while irrelevant and inadmissible, was not reversible error. 409 S.C. at 58, 760 S.E.2d at 806. The court noted that the publication of the letter-which referred to Hill as a "suspect" and stated that if he was charged, "an additional biological specimen must be submitted for court purposes"-could "have created an inference in a juror's mind that [Hill] had a criminal record." Id . at 57-58, 760 S.E.2d at 806. The court held, however, that its admission did not amount to reversible error due to it being cumulative to the other evidence of the CODIS database admitted without objection, and furthermore, the State did not attempt to admit evidence *223 as to why Hill's DNA was in the database in the first place. Id .
We believe the trial court did not err in admitting the testimony regarding the database search. Initially, we believe the case at hand differs from the error in Hill because (1) the State did not place a letter into evidence; (2) the reference to **510 the database did not contemporaneously refer to Patterson as a "suspect"; and (3) the State did not mention the type of database that the match came from. Here, the State's witnesses referred to the database as "the database" or "our database," rather than the "CODIS database." The State did not attempt to solicit testimony regarding the purpose of the database, nor did it bring up Patterson's prior record. Moreover, although SLED is a law enforcement agency, given the prevalence in which personal data is shared with public and private agencies for various purposes, e.g., military records and private commercial enterprises, we do not believe the testimony necessarily implied Patterson had a criminal record. See S.C. Code Ann. § 23-3-610 (2007) (instructing SLED to "develop DNA profiles on samples for law enforcement purposes and for humanitarian and non[-]law enforcement purposes").
Furthermore, we believe the reference to the database was relevant and highly probative because it explained a critical step in the investigation. Specifically, the database testimony explained how Patterson came to be identified as a suspect in the first place. Without the testimony, the jury would have been left to speculate as to the means law enforcement used to initially place Patterson at the crime scene. See State v. Schmidt , 288 S.C. 301, 303, 342 S.E.2d 401, 403 (1986) ("Evidence is relevant if it tends to establish or to make more or less probable some matter in issue upon which it directly or indirectly bears."). Additionally, based on the fact the jury was presented with only limited information regarding the DNA database search, and given that Patterson's DNA was independently matched with the DNA found on the fedora, we believe any prejudice to Patterson was minimal. See State v. Wiles , 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009) ("[E]ven where the evidence is shown to be relevant, if its probative value is substantially outweighed by the danger of unfair prejudice, the evidence must be excluded." (emphasis added) ); State v. Council , 335 S.C. 1, 13, 515 S.E.2d 508, 514 (1999) (noting that an inadvertent vague reference to defendant's prior record will not amount to prejudicial error). Accordingly, we do not believe the trial court abused its discretion in admitting the DNA database testimony.
**511 III. Trial Court's Opening Statement
Finally, Patterson argues the trial court's opening remarks to the jury regarding the trial being a "search for the truth" were prejudicial in that they impermissibly shifted the burden of proof away from the State. We agree the trial court erred; however, we find the remarks do not constitute reversible error under the facts of this case.
Our supreme court has consistently cautioned against using language that suggests the object of a trial is to find "the truth." See State v. Beaty , 423 S.C. 26, 34, 813 S.E.2d 502, 506 (2018) ("These phrases could be understood to place an obligation on the jury, independent of the burden of proof, to determine the circumstances surrounding the alleged crime and from those facts alone render the verdict the jury believes best serves its perception of justice."); State v. Daniels , 401 S.C. 251, 256, 737 S.E.2d 473, 475 (2012) (holding while it was improper for the trial court to charge the jury "that a criminal jury's duty is to return a verdict that is 'just' or 'fair' to all parties," the issue was unpreserved); State v. Aleksey , 343 S.C. 20, 28 n.2, 538 S.E.2d 248, 252 n.2 (2000) ("Although settled law disfavors instructing jurors to seek the truth in some contexts because it might be misleading as to the burden of proof, we decline to hold any mention of 'the truth' in jury charges is unconstitutional."); State v. Needs , 333 S.C. 134, 155, 508 S.E.2d 857, 867-68 (1998) (noting jury instructions on reasonable doubt which charge the jury to "seek the truth" are disfavored because they "[run] the risk of unconstitutionally shifting the burden of proof to a defendant"). Accordingly, we believe the trial court erred in making such statements in its comments to the jury, and we take the opportunity *224 to reiterate our supreme court's instructions that trial courts should "avoid these terms and any others that may divert the jury from its obligation in a criminal case to determine whether the State has proven the defendant's guilt beyond a reasonable doubt." Beaty , 423 S.C. at 34, 813 S.E.2d at 506.
Nevertheless, we do not believe the error warrants reversal. See State v. Sherard , 303 S.C. 172, 176, 399 S.E.2d 595, 597 (1991) (providing appellate courts will not set aside convictions **512 due to insubstantial errors not affecting the result). First, the trial court's improper comments came at the beginning of trial rather than during the charge on the State's burden of proof at the end, which, we believe, is when such a statement would have the most prejudicial effect. See Daniels , 401 S.C at 256, 737 S.E.2d at 475 ("Such a charge could effectively alter the jury's perception of the burden of proof, substituting justice and fairness for the presumption of innocence and the State's burden to prove the defendant's guilt beyond a reasonable doubt."). Furthermore, notwithstanding the improper comments, we note the trial court gave an accurate definition of reasonable doubt later during its opening statement and again in the jury charge. See Aleksey , 343 S.C. at 27, 538 S.E.2d at 251 ("[J]ury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error."). Additionally, the trial court gave a supplemental instruction following the jury charge that further emphasized the State's burden of proof. Finally, in light of the overwhelming evidence against Patterson, we believe the error did not contribute to the verdict. See Arnold v. State , 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992) (finding error in jury charge was harmless beyond a reasonable doubt when it did not contribute to the verdict obtained). Accordingly, our review of the record reveals no prejudice sufficient to warrant overturning Patterson's conviction.
CONCLUSION
Based on the foregoing, we find no error in the admission of the DNA evidence at trial and further find the trial court's statements to the jury, while error, did not contribute to the jury's verdict. Therefore, Patterson's conviction and sentence are
AFFIRMED.
THOMAS and GEATHERS, JJ., concur.

CODIS is an acronym for the FBI's "Combined DNA Index System."

Patterson does not contest that the State established a complete chain of custody for the fedora or the DNA sample taken directly off Paterson.

Boehm testified the probability of randomly selecting an unrelated person with a matching DNA profile was a one-in-730-quintillion chance.

Lieutenant McClure retired from SLED prior to trial.

Patterson has an extensive criminal record, although no evidence of his prior convictions were admitted at trial.