# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Michael Vernon Beaty Jr., Appellant.

Appellate Case No. 2015-000718

―――――――――

Appeal from Laurens County
W. Jeffrey Young, Circuit Court Judge

―――――――――

Opinion No. 27795
Heard June 15, 2017 – Filed April 25, 2018

―――――――――

**AFFIRMED**

―――――――――

Clarence Rauch Wise and E. Charles Grose Jr., both of
Greenwood, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, and Assistant
Attorney General Susannah Rawl Cole, all
of Columbia; and Solicitor David Matthew Stumbo, of
Greenwood, for Respondent.

―――――――――

**JUSTICE JAMES:** Michael Vernon Beaty Jr. (Appellant) was convicted of
murdering Emily Anna Asbill (Victim) and received a life sentence. We affirmed
Appellant's conviction on December 29, 2016, in *State v. Beaty*, Op. No. 27693 (S.C.
Sup. Ct. filed Dec. 29, 2016) (Shearouse 2017 Adv. Sh. No. 1 at 13). We

subsequently granted the parties' petitions for rehearing and heard further argument. We affirm Appellant's conviction.

## FACTUAL AND PROCEDURAL HISTORY

Appellant and Victim attended an evening party in their hometown of Clinton. They decided to leave the party between 9:00 pm and 10:00 pm and agreed to give their friend Will Alexander a ride home. Appellant drove the vehicle, Victim sat in the front passenger seat, and Alexander sat in the backseat. At approximately 11:00 pm, Appellant rang the doorbell at his parents' home and asked his stepfather for help. When Appellant's stepfather approached the car, he found Victim unconscious on the front passenger side floorboard and called 911. EMS arrived shortly thereafter and found Victim sitting on the floorboard with her head laid back on the passenger seat. She was not breathing and did not have a pulse. Appellant's shirt was wrapped around Victim's right arm. Victim was found to have severe "road rash" on her right and left arms and bruising to her neck. EMS transported Victim to the hospital, where she was pronounced dead. An autopsy revealed the cause of Victim's death was asphyxia due to strangulation.

At trial, the State introduced several of Appellant's statements to law enforcement into evidence. These statements varied materially. Appellant initially suggested Victim died of a self-inflicted cutting injury. Following law enforcement's receipt of the autopsy results, Appellant voluntarily returned to the police station and repeated his earlier version of events. However, in this statement, Appellant stated he had to undo Victim's seatbelt when he realized she was unconscious after arriving at his parents' home. When Appellant was informed of the autopsy results, which showed Victim had been strangled and had "road rash," Appellant gave a written statement explaining he and Victim had argued during the car ride, Victim had opened the car door to jump out, and he had grabbed her shirt to pull her back into the car.

At trial, the State and Appellant presented expert witnesses to support their theories as to the events leading up to Victim's death. The State's theory was that Appellant strangled Victim with a USB cord after a fight during which she tried to jump out of the moving car. Appellant's theory was that when Victim tried to jump out of the moving car, he held her in by her tank top, which caused the ligature marks on her neck and rendered her unconscious, and that once he pulled her back into the car, she succumbed to positional asphyxiation due to the awkward position she assumed on the floorboard.

The pathologist who conducted the autopsy was called by the State and testified the ligature marks on Victim's neck were visible on the front and sides of her neck but not on the back of her neck. The pathologist identified a USB cord found in the car as consistent with the ligature marks and the abrasion on Victim's neck. DNA analysis of the USB cord showed Victim's DNA on the middle of the cord. The cord's ends had a mixture of at least two individuals' DNA, with Victim being the major contributor and Appellant being the minor contributor.

A forensic pathologist also testified for Appellant and stated the USB cord did not cause the injuries to Victim's neck and opined positional asphyxiation played a role in Victim's death. A mechanical engineer testified for Appellant and stated the ligature marks on Victim's neck could have been caused by someone holding her up by her tank top as she hung out of the car and that both Victim's abrasions and her blood found on the outside of the car were consistent with this scenario.

Appellant was convicted of murder and received a life sentence. Appellant timely filed a notice of appeal, and we certified the case from the court of appeals pursuant to Rule 204(b), SCACR. Appellant raised the following issues: (1) whether the State presented substantial circumstantial evidence proving Appellant committed murder; (2) whether the trial judge erred by denying Appellant's request to charge the lesser-included offense of involuntary manslaughter; (3) whether the trial judge erred in using certain language in his opening remarks to the jury; (4) whether the trial judge erred during the closing argument stage in not (a) requiring the State to open fully on the law and the facts of the case and (b) limiting the State's final closing solely to reply to new arguments presented during Appellant's closing arguments; (5) whether the trial judge erred in charging the law of circumstantial evidence as set forth in *State v. Logan*, 405 S.C. 83, 747 S.E.2d 444 (2013); (6) whether the trial judge erred in excluding testimony concerning a prior incident when Victim threatened to jump from an automobile; (7) whether the trial judge erred in denying one of Appellant's voir dire requests; and (8) whether a new trial should be ordered based on the cumulative error doctrine.

In affirming Appellant's conviction in our prior opinion, we found two of the issues Appellant raised merited discussion. *State v. Beaty*, Op. No. 27693 (S.C. Sup. Ct. filed Dec. 29, 2016) (Shearouse 2017 Adv. Sh. No. 1 at 14–17). First, we addressed the trial judge's use of certain language in his opening remarks to the jury and the content requirements and order of closing argument. We affirmed Appellant's conviction but instructed trial judges to avoid language urging jurors to

"search for the truth," find "true facts," and render a "just verdict." Second, we adopted a rule for closing argument in criminal cases, requiring the party with the right to open and close to open fully on the law and facts and limit its reply to those matters raised by the other party in its closing argument. We affirmed all of Appellant's remaining issues under Rule 220(b), SCACR.

We granted the parties' petitions for rehearing and have heard further argument. We issue this opinion to again address both the trial judge's use of certain language in his opening remarks to the jury and the rules governing the content and order of closing argument.[1] We affirm Appellant's conviction.

## DISCUSSION

### I. Trial Judge's Opening Remarks

After the jury was sworn, the trial judge gave preliminary remarks to the jury. The trial judge outlined the roles, duties, and responsibilities of the lawyers and the jury and explained trial procedure. During these remarks, the judge stated:

> This . . . trial . . . is a search for the truth in an effort to make sure that justice is done. Searching for the truth and ensuring that justice is done is often slow, deliberate, and repetitive.
>
> [The attorneys] are sworn to uphold the integrity and the fairness of our judicial system and to help you as jurors to search for the truth.
>
> You also just took an oath to listen to the evidence in this case and reach a fair and just verdict and you are expected to be professional, reasonable and ethical.

---

[1] All remaining issues are affirmed pursuant to Rule 220, SCACR. *State v. Bailey*, 298 S.C. 1, 377 S.E.2d 581 (1989); *State v. Phillips*, 416 S.C. 184, 785 S.E.2d 448 (2016); *State v. Sterling*, 396 S.C. 599, 723 S.E.2d 176 (2012); *State v. Scott*, 414 S.C. 482, 779 S.E.2d 529 (2015); *State v. Marin*, 415 S.C. 475, 783 S.E.2d 808 (2016); *State v. Smith*, 230 S.C. 164, 94 S.E.2d 886 (1956); *State v. Vang*, 353 S.C. 78, 577 S.E.2d 225 (Ct. App. 2003).

> You the jurors find [the facts] from the testimony from a witness from the witness stand or any other evidence, and after hearing that evidence you will deliberate and render a true and just verdict under the solemn oath that you just took as jurors.
>
> In determining what the true facts are in this case you must decide whether or not the testimony of a witness is believable.
>
> After argument of counsel and the charge on the law by me, you will then be in a position to determine what the true facts are and apply those facts to the law and thus render a true and just verdict.

Appellant objected to the use of the phrases "search[ing] for the truth," "true facts," and "just verdict." Appellant argued these phrases were especially improper when linked with the State's "misstatement" of circumstantial evidence and reasonable doubt in its opening statement, and because the State had informed the jury that it would have to pick between two competing theories. The State acknowledged to the trial judge that the "search for the truth" language is disfavored but argued that its use here was not reversible error. The trial judge denied Appellant's request for a curative instruction, concluding that his remarks were merely an opening comment and not a jury instruction.

Appellant relies upon *State v. Aleksey*, 343 S.C. 20, 538 S.E.2d 248 (2000), in which we held that jury instructions on reasonable doubt which also charge the jury to "seek the truth" or "search for the truth" run the risk of unconstitutionally shifting the burden of proof to the defendant. In *Aleksey*, we found there was no reversible error because the "seek the truth" language was charged in conjunction with the credibility of witnesses charge, and not with either the reasonable doubt or circumstantial evidence charges. *Id.* at 27–29, 538 S.E.2d at 251–53; *cf. State v. Daniels*, 401 S.C. 251, 737 S.E.2d 473 (2012) (instructing discontinuance of charge that jury's duty is to return a verdict that is just and fair to all parties).

As the trial judge noted, the disputed comments can be distinguished from *Aleksey* because they were a mere statement to the jury and not a charge on the law. Further, the remarks were not linked to either the reasonable doubt or the

circumstantial evidence charges as was condemned in *Aleksey*. However, we agree with Appellant that a trial judge should refrain from informing the jury, whether through comments or through a charge on the law, that its role is to search for the truth, or to find the true facts, or to render a just verdict.[2] These phrases could be understood to place an obligation on the jury, independent of the burden of proof, to determine the circumstances surrounding the alleged crime and from those facts alone render the verdict the jury believes best serves its perception of justice. We instruct trial judges to avoid these terms and any others that may divert the jury from its obligation in a criminal case to determine whether the State has proven the defendant's guilt beyond a reasonable doubt. Although there was error here, our review of the entirety of the judge's opening comments and the entire trial record convinces us that Appellant has not shown prejudice from this error sufficient to warrant reversal. *Compare State v. Coggins*, 210 S.C. 242, 245, 42 S.E.2d 240, 241 (1947) (providing trial judge's choice of words and comments, while not "happy," did not require reversal).

## II.    Closing Arguments

### A.    Background

During trial, before closing arguments, Appellant requested the trial judge to require the State to open fully on the law and facts of the case and then reply only to new matter raised by Appellant in his closing argument. Appellant stated to the trial judge, "I understand [the State is] going to open fully on the law and the facts, and not just open on some of the facts, but fully on the facts to explain their theory of the case so that --." The trial judge then interrupted and said, "[The State] will open and explain and then they will have final argument which I will allow them to go int[o] what they want to talk about." The solicitor responded, "[W]e believe the law in the state right now is the State [has the option] to bifurcate or to give one argument. We honestly would prefer to give one argument, but if [Appellant] demands that we open and close, I don't have any problem with it." The trial judge replied, "You can do it either way."

The State proceeded to open on the law and gave the facts only a cursory review. Appellant then gave his closing argument and stated to the jury that when

---

[2] We acknowledge the general sessions benchbook this Court previously supplied to all circuit judges contained language virtually identical to the disputed language employed by the trial judge.

he concluded his argument, the State would give a final argument and reply to everything he said.  Appellant then informed the jury:

> Then what's going to happen is this.  The State's then going to come up with their real theory.  How the arm got scratched, exactly how this alleged strangulation took place, and we have to sit mute.  We will not have the chance to come back and refute that, and yet they'll have a chance to refute everything we've laid out there.  That was their choice as to how they chose to do the closing arguments.  I can't make them do it any differently.

During its reply argument,[3] the State reviewed the inconsistencies in the statements Appellant gave to law enforcement.  The State also argued the murder took place in Appellant's car on the street in front of his parents' house and that Appellant murdered Victim because she was screaming and Appellant wanted to "shut her up."  Appellant argues this was improper reply argument because he mentioned none of these points during his closing argument.

Appellant argued the State's reply argument "was nothing but one big sandbag, which we discussed in chambers"[4] and constituted a violation of his due process rights.  Appellant asserted the State presented factual scenarios for the first time in its reply argument and requested either a mistrial or the opportunity to reply to the State's argument.  The trial judge denied both requests.

In this appeal, Appellant contends the trial judge erred in refusing to require the State to open fully on the law and facts in its closing argument, in refusing to limit the State's reply argument to matters raised by Appellant's counsel in his closing argument, and in refusing to allow him to reply to new matter raised by the

---

[3] In this opinion, if used in conjunction with the State's second closing argument, the terms "the reply," "reply argument," "final argument," and "last argument" are synonymous.

[4] When used as a transitive verb, Merriam–Webster defines "sandbag" as "to conceal or misrepresent one's true position, potential, or intent especially in order to gain an advantage over."  Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/sandbag.

State in its reply argument. Appellant claims these errors violated his rights under the due process clauses of the South Carolina and United States Constitutions.[5]

In our prior opinion, we agreed in part, holding that in criminal trials, "where the party with the 'middle' argument requests, the party with the right to the first and last closing argument must open in full on the law and the facts, and in reply may respond in full to the other party's argument but may not raise new matter." Nevertheless, we concluded Appellant was not entitled to a new trial, as any error in the trial judge's denial of his motion to require the State to open in full on the facts and the law and to limit its reply was harmless beyond a reasonable doubt. Having revisited these issues upon rehearing, we now address the history of the rules governing the content and order of closing argument in criminal cases, and we address our authority to promulgate new rules governing the same. We also address Appellant's due process argument and conclude his conviction must be affirmed.

### B. Rules Governing Content and Order of Closing Argument

Prior to 1802, the practice regarding closing arguments in all public prosecutions on behalf of the State was to allow the State the privilege of opening and concluding the arguments in every case addressed to the jury. *See State v. Brisbane*, 2 S.C.L. (2 Bay) 451, 453 (1802). This partiality shown to prosecutors was a "relict of the kingly prerogative." *Id.* However, in *Brisbane*, the Constitutional Court of Appeals of South Carolina (a predecessor to this Court) formulated a rule governing closing argument in criminal courts, holding that in all cases in which a defendant calls no witnesses, he should have the privilege of concluding to the jury. *Id.* at 454.

In *State v. Huckie*, Prince Huckie and his codefendant Paris Bailey were jointly indicted and tried for burglary and larceny. 22 S.C. 298, 298–99 (1885). Following the State's presentation of evidence, Huckie declined to offer evidence in his defense, but Bailey called one witness. *Id.* at 299. Huckie argued it was error to deny him the last argument because he did not offer any evidence in his own behalf. *Id.* We noted there was no express rule giving the defendant a right to reply when the defendant offered no evidence but stated, "[R]esting upon the common law, such has been the practice." *Id.* We concluded that when a defendant in a criminal

---

[5] Due process requires no person shall be deprived of life, liberty, or property without due process of law. U.S. CONST. amend. XIV § 1; S.C. CONST. art. I, § 3.

prosecution offers no evidence, he is entitled to the last argument; however, when two or more defendants are jointly tried, if any codefendant introduces evidence, the State is entitled to the reply argument. *Id.* at 300–01.[6]  *See also State v. Mouzon*, 326 S.C. 199, 485 S.E.2d 918 (1997); *State v. Crowe*, 258 S.C. 258, 188 S.E.2d 379 (1972).

In *State v. Garlington*, 90 S.C. 138, 144–45, 72 S.E. 564, 566 (1911), we held that in cases in which no defendant introduces evidence, the defendant(s) have the right to open and close during closing argument but may waive the right to both arguments or may waive the right to open and instead present full argument to the jury after the State's closing argument.  In *State v. Gellis*, 158 S.C. 471, 485–86, 155 S.E. 849, 855 (1930), the defendant did not call any witnesses in his own defense, but he introduced letters and telegrams into evidence through a prosecution witness. Holding the defendant did not have the right to the final argument, we clarified that "if a defendant offers *any evidence* on trial of the case, the state is not deprived of its general right to the opening and concluding arguments."  *Id.* at 486–87, 155 S.E. at 855 (emphasis added).  Consequently, the loss of the right to make the final argument depends upon whether a defendant introduces any evidence at all, not upon whether he calls any witnesses.

In *State v. Atterberry*, 129 S.C. 464, 469, 124 S.E. 648, 650 (1924), the defendant was indicted for possession of "a quantity of whisky" in violation of the Prohibition Law and was found guilty by a jury.  For perhaps the first time, we applied a codified court rule to closing arguments in a criminal trial.  The defendant introduced evidence during the trial, and prior to closing arguments, he demanded the trial court to require the State to open in full on the facts and the law.  *Id.* at 471, 124 S.E. at 651.  The trial judge refused the defendant's request and allowed the State to fully waive its opening argument.  *Id.*  At that time, Circuit Court Rule 59 provided, "The party having the opening in an argument shall disclose his entire case; and on his closing shall be confined strictly to a reply to the points made and authorities cited by the opposite party."  We explained Rule 59 was clear and mandatory and held the trial court's failure to require the State to open fully on the law and facts was reversible error.  *Atterberry*, 129 S.C. at 471, 124 S.E. at 651. Noting the "wisdom of this rule" was most clearly evident in circumstantial evidence cases, we explained that if the rule did not require the State to open in full on the facts and the law, an able prosecutor would be able to present a connection of

---

[6] The rationale behind this particular rule, as explained in *Huckie*, is curious but irrelevant to the instant case.

circumstances to the jury during his last argument that the defendant would not be allowed to rebut. *Id.*

Subsequent to *Atterberry*, Circuit Court Rule 59 and any wisdom it possessed were replaced by Circuit Court Rule 58, which provided in relevant part, "The party having the opening in an argument shall disclose fully *the law* upon which he relies if demanded by the opposite party." (emphasis added). We addressed Rule 58 in *State v. Lee*, 255 S.C. 309, 178 S.E.2d 652 (1971), *overruled in part on other grounds by State v. Belcher*, 385 S.C. 597, 685 S.E.2d 802 (2009). In *Lee*, the defendant introduced evidence to the jury. At the close of the trial, the defendant requested the trial judge to require the State to open fully on the law and the facts during its closing argument. *Id.* at 317, 178 S.E.2d at 656. The trial judge required the State to open on the law but refused to require the State to open on the facts. *Id.* We held "the trial judge, under the changed rule, was correct in holding that a solicitor is no longer required to make an opening argument to the jury on issues of fact." *Id.* at 318, 178 S.E.2d at 656. There was no discussion of due process concerns or "the wisdom" inherent in the former Rule 59.[7]

On July 1, 1985, the South Carolina Rules of Civil Procedure went into effect. *See* Rule 86, SCRCP. Rule 1, SCRCP, limits the application of those rules to civil cases.[8] Rule 85(b), SCRCP, also effective as of July 1, 1985, retained ten enumerated criminal practice rules contained in the Appendix of Criminal Practice Rules; according to Rule 85(b), SCRCP, those ten rules were renumbered as Criminal Practice Rules 1 through 10 and were to "continue in full force and effect." Circuit Court Rule 58 was not one of those ten retained rules. Rule 85(c), SCRCP, also effective July 1, 1985, provides that all other Circuit Court Rules were repealed

---

[7] Both Rule 59 and Rule 58 were part of an appendix to the Code of Civil Procedure. In his concurrence in *Atterberry*, Acting Associate Justice Aycock observed that nothing limited the application of these rules to civil cases. 129 S.C. at 473, 124 S.E. at 651. Circuit Court Rules 59 and 58, while they were in effect, were properly applied to criminal cases.

[8] Rule 43(j), SCRCP, controls the content and order of argument in civil cases. This rule essentially provides that the plaintiff shall have the right to open and close at the trial of the case and must open in full, and in reply may respond in full but may not introduce any new matter. This rule has never been applied to criminal cases, and Rule 1, SCRCP, expressly prohibits such application.

as of that date.  Consequently, Circuit Court Rule 58 no longer existed as a codified rule as of July 1, 1985.

On September 1, 1988, the South Carolina Rules of Criminal Procedure went into effect.  *See* Rule 40, SCRCrimP.  No rule contained within the South Carolina Rules of Criminal Procedure addresses the content and order of closing arguments in criminal trials.  Rule 39, SCRCrimP, expressly repealed all existing Criminal Practice Rules.  With the repeal of Circuit Court Rule 58 by Rule 85(c), SCRCP, and with the adoption of Rule 39, SCRCrimP, there is no codified or otherwise duly adopted court rule governing the content and order of closing arguments in criminal cases in which a defendant introduces evidence.  However, Rule 37, SCRCrimP, provides in part, "In any case where no provision is made by statute or these rules, *the procedure shall be according to the practice as it has heretofore existed* in the courts of the State."  Rule 37, SCRCrimP (emphasis added).  In the instant case, both the content and order of closing arguments were in keeping with repealed Circuit Court Rule 58, which required the State to open only on the law.  *Lee*, 255 S.C. at 318, 178 S.E.2d at 656.  We must first determine whether, almost thirty years after its adoption, Rule 37 preserves the application of repealed Circuit Court Rule 58 in criminal cases in which a defendant introduces evidence.  We hold it does not.

This Court cannot simply assume that from July 1, 1985 through the trial of the instant case, the criminal trial courts of this State have uniformly continued to follow repealed Circuit Court Rule 58 to the extent that it remains the "practice as it has heretofore existed" in criminal cases in which the defendant introduces evidence.  We have no effective way to ascertain the prevailing practices of current and past trial judges.  We can only conclude that absent a published court rule or a defined common law rule, individual trial judges have developed their own practices governing closing argument in cases in which a defendant introduces evidence.  That is an untenable approach to such an important phase of a criminal trial.

One may inquire whether this Court may simply create a much-needed practice or procedural rule simply by exercising its authority to alter the common law.  This is a reasonable inquiry, especially since the courts of this State attend on a daily basis to the notions of order, predictability, and due process in criminal proceedings.  Indeed, "[t]he common law changes when necessary to serve the needs of the people.  We have not hesitated to act in the past when it has become apparent that the public policy of the State is offended by outdated rules of law."  *Russo v. Sutton*, 310 S.C. 200, 204, 422 S.E.2d 750, 753 (1992) (citations omitted).  *See also Marcum v. Bowden*, 372 S.C. 452, 643 S.E.2d 85 (2007) (altering the common law

of social host liability); *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991) (abolishing contributory negligence); *Hossenlopp v. Cannon*, 285 S.C. 367, 329 S.E.2d 438 (1985) (observing that since the dog-bite law was of common law origin, it could be changed by common law mandate); *McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985) (abolishing sovereign immunity).

In the foregoing cases, we certainly did alter the common law and were within our authority to do so. However, those cases involved substantive common law, not common law procedural rules. We are prohibited on two fronts from promulgating a new rule in the course of deciding the issues in this case. First, this Court does not have the power to adopt new rules of procedure for future trials by writing opinions to decide cases. Instead, when we decide an appeal from a criminal conviction—as we do here—our power is limited to correcting errors of law.[9]

Second, the South Carolina Constitution limits this Court's power to promulgate rules governing practice and procedure in the courts of this State. Before 1973, the South Carolina Constitution did not address in any manner the power of this Court to implement rules of practice and procedure in the courts of this State. On April 4, 1973, article V, section 4 of the South Carolina Constitution was amended to grant power to this Court, subject to statutory law, to "make rules governing the practice and procedure in all such courts [in the unified judicial system]." S.C. CONST. art. V, § 4. While this amendment was in effect, we did not make any rules governing the content and order of closing argument in criminal cases, and Circuit Court Rule 58 and other Circuit Court Rules carried the day until July 1, 1985, when the South Carolina Rules of Civil Procedure came into being, with Rule 85, SCRCP, preserving some criminal practice rules and repealing others, including Circuit Court Rule 58.

On February 26, 1985, article V, section 4A of the South Carolina Constitution took effect. It remains in effect today and provides:

> *All rules and amendments to rules governing practice and procedure in all courts of this State promulgated by the Supreme Court must be submitted by the Supreme Court to the Judiciary Committee of each House of the General*

---

[9] *See* S.C. CONST. art. V, § 5 ("The Supreme Court shall constitute a court for the correction of errors at law under such regulations as the General Assembly may prescribe.").

> *Assembly* during a regular session, but not later than the first day of February during each session. Such rules or amendments shall become effective ninety calendar days after submission unless disapproved by concurrent resolution of the General Assembly, with the concurrence of three-fifths of the members of each House present and voting.

S.C. CONST. art. V, § 4A (emphasis added).

On January 28, 2016, we initiated the prescribed legislative process by proposing an amendment to the South Carolina Rules of Criminal Procedure to add Rule 21. *See Re: Amendments to the South Carolina Rules of Criminal Procedure*, 2014-002673 (S.C. Sup. Ct. Order dated Jan. 28, 2016). Proposed Rule 21 stated, "Closing arguments in all non-capital cases shall proceed in the following order: (a) the prosecution shall open the argument in full; (b) the defense shall be permitted to reply; and (c) the prosecution shall then be permitted to reply in rebuttal." *Id.* However, by concurrent resolution, the General Assembly, as was its prerogative, rejected proposed Rule 21 in April 2016. *See* S. Con. Res. 1191, 121st Gen. Sess. (S.C. 2016).

While we acknowledge and respect the limitations placed on this Court's power pursuant to article V, section 4A of our constitution, in order for our criminal court system to operate efficiently, effectively, and consistently, clearly stated rules governing the content and order of closing argument are required. Our current closing argument rules consist of the following patchwork: Pursuant to the common law rule pronounced in *Brisbane* and as clarified in *Garlington*, in cases in which no defendant introduces evidence, the defendant(s) have the right to open and close, but may waive the right to both or may waive opening and present full argument after the State's closing argument. Pursuant to the common law rule set forth in *Huckie*, if two or more defendants are jointly tried, if any one defendant introduces evidence, the State has the final closing argument. Pursuant to the common law rule as clarified in *Gellis*, in cases in which a defendant introduces evidence of any kind, even through a prosecution witness, the State has the final closing argument. However, in cases in which the State is entitled to the reply argument, there is no common law or codified rule as to whether the State must open in full on the law, or the facts, or both, or neither, and there is no rule governing the content of the State's reply argument.

This case falls within the last category. Appellant introduced evidence during trial. Under our holdings in *Huckie* and *Gellis*, the State was entitled to the reply argument. Appellant asked the trial court to require the State to open in full on the facts and the law and asked the trial court to restrict the State's reply argument to rebuttal to matters raised by Appellant in his closing argument. The trial court denied these requests and essentially followed repealed Circuit Court Rule 58, allowing the State to open on the law and give the facts a cursory review. Appellant then presented his closing argument. After the State made its reply argument, Appellant asked to be allowed to rebut what he argued was new matter raised by the State. The trial court denied this request as well. Appellant claims his due process rights were violated by this procedure.

## C.    Due Process

While this Court's authority to promulgate rules is restricted by article V, section 4A of the South Carolina Constitution, we retain the authority to determine— on a case-by-case basis—whether a defendant's due process rights have been violated by procedural methods employed during a trial. Stated another way, our authority to rectify a specific due process violation falls within our constitutional power to correct errors of law and trumps our inability to adopt a clearly stated practice or procedural rule. We must therefore determine whether Appellant's due process rights were violated in this instance.

"Due Process is not a technical concept with fixed parameters unrelated to time, place, and circumstances; rather it is a flexible concept that calls for such procedural protections as the situation demands." *State v. Legg*, 416 S.C. 9, 13, 785 S.E.2d 369, 371 (2016). In any case, procedural due process contemplates a fair trial. *Id.* This concept applies to closing arguments. South Carolina case law focuses upon allegedly inflammatory or unsupported content of the State's closing argument, not upon whether the State must open in full on the facts and not upon reply arguments which have a basis in the record but to which a defendant is not allowed to respond. Generally, "[i]mproper comments [made during closing argument] do not automatically require reversal if they are not prejudicial to the defendant, and the appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument." *Humphries v. State*, 351 S.C. 362, 373, 570 S.E.2d 160, 166 (2002). The relevant inquiry is whether the State's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* "A denial of due process occurs when a defendant in a criminal

trial is denied the fundamental fairness essential to the concept of justice." *State v. Hornsby*, 326 S.C. 121, 129, 484 S.E.2d 869, 873 (1997).

Appellant cites *Bailey v. State*, 440 A.2d 997, 1003 (Del. 1982), in which the Delaware Supreme Court held the trial court abused its discretion in permitting the State to utilize the "sandbagging" trial strategy in its reply argument. Appellant acknowledges there is no rule in South Carolina that prohibits "sandbagging," but he asserts his due process rights were violated because the State was allowed, in its reply argument, to present to the jury for the first time "two crucial theories" and "an out of context statement of Appellant."

Appellant's defense at trial was that he accidentally strangled Victim when he pulled her back into the moving vehicle by pulling on her tank top, thereby rendering her unconscious, with Victim then succumbing to positional asphyxiation on the front passenger floorboard. The State's theory of the case was that Appellant strangled Victim to death with the USB cord found in Appellant's car. The Appellant's parents' driveway as a potential scene of the murder was put before the jury through the State's witnesses—the first responders who found Victim deceased in the driveway of Appellant's parents' house. Appellant contends the first new theory argued by the State in its reply argument dealt with the location of the murder, i.e., that Appellant strangled Victim in Appellant's car in the driveway in front of Appellant's parents' house. Appellant claims his due process rights were violated when the State was permitted, in its reply, to argue this point to the jury. Appellant contends that at the least, he should have been permitted to respond. We first note that the State's presentation of this theory during its reply was arguably a proper response to the theory Appellant advanced in his closing argument. Whatever the case, the question of exactly where Victim's death occurred was largely inconsequential to the question of whether Appellant murdered Victim or whether Victim instead died of causes unrelated to Appellant's criminal conduct.

Appellant contends the second new theory argued by the State in its reply was that Appellant murdered Victim because Victim was screaming at Appellant during the drive home, and Appellant wanted to "shut her up." The fact that the two were in an argument and Victim was screaming at Appellant was entered into evidence through Appellant's own statement to law enforcement. Again, the State's advancement of this theory in reply was arguably a proper response to the sequence of events argued by Appellant in his closing argument. Even if it could be considered new matter, we conclude the State's advancement of this theory was relatively insignificant.

During its reply argument, the State also presented a PowerPoint summary of one of Appellant's statements to law enforcement. Appellant argues the State took the statement out of context when it "implied that [Appellant] said that [Victim] made it seem like I made her want to hurt herself." Appellant's actual statement to law enforcement was, "Yet a little before or at this point, I believe, that [Victim] made it seem like I had made her want to hurt herself, which is common for us when we argue." We conclude this minor point was insignificant to the jury's consideration of the issues.

While the State perhaps did not restrict its reply argument to matters raised by Appellant, and while Appellant was not allowed to respond to the foregoing three points, we conclude Appellant did not suffer prejudice as a result. *See Humphries*, 351 S.C. at 373, 570 S.E.2d at 166 (errors in closing argument "do not automatically require reversal if they are not prejudicial to the defendant, and the appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument"); *id.* (noting the relevant inquiry is whether the State's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process"). Neither the State's reply arguments on these three points nor the trial court's refusal to allow Appellant to respond denied Appellant "the fundamental fairness essential to the concept of justice." *See Hornsby*, 326 S.C. at 129, 484 S.E.2d at 873. Therefore, we conclude Appellant has not established a due process deprivation.

## CONCLUSION

We instruct trial judges to omit any language, whether in remarks to the jury or in an instruction, which might have the effect of lessening the State's burden of proof in a criminal case. Such language includes, but is not limited to, any language suggesting to the jury that its task is to "search for the truth" or to find "true facts," or that the jury should render a "just verdict." However, we hold Appellant has failed to show prejudice from these remarks sufficient to warrant reversal.

Article V, section 5 of the South Carolina Constitution limits this Court's authority to correcting errors of law and does not empower us to promulgate a procedural rule for future cases by simply issuing an opinion. Article V, section 4A, of the South Carolina Constitution prohibits this Court from adopting any rules of practice and procedure—even a much-needed rule governing the practice and

procedure of closing arguments in criminal cases—without first going through the prescribed legislative process.

Currently, there is no rule governing the content and order of closing arguments in criminal cases in which a defendant introduces evidence, except for the "constitutional rule" that a defendant's right to due process cannot be violated at any stage of a trial. Consequently, trial judges must, on a case-by-case basis, ensure that a defendant's due process rights are not violated during the closing argument stage. Absent authority to formally adopt procedural rules, our authority—and the authority of the trial court—is but to address due process considerations as they arise. In cases in which a defendant introduces evidence, trial judges clearly have the authority to require the State to open in full on the facts and the law and have the authority to restrict the State's reply argument to matters raised by the defense in closing. This authority remains in keeping with the trial judge's authority to ensure that a defendant's due process rights are not violated during a criminal trial. We remain mindful of the need for clearly articulated rules governing the content and order of closing arguments in cases in which a defendant introduces evidence. The uncertainty resulting from the absence of such rules is unfortunate. We hope the day will soon come when such rules are firmly in place.

We hold Appellant has not established prejudice resulting from the trial judge's opening remarks, and we hold Appellant was not denied due process during the closing argument stage of the trial. Appellant's conviction is therefore

**AFFIRMED**.

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**