**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Darryl Douglas Bradley, Jr., Appellant.

Appellate Case No. 2020-000524

———————

Appeal From Beaufort County
Perry M. Buckner, III, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-031
Submitted September 1, 2023 – Filed January 24, 2024

———————

**AFFIRMED**

———————

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia, and Solicitor Isaac McDuffie Stone, III, of
Bluffton, all for Respondent.

———————

**PER CURIAM:** Darryl D. Bradley, Jr. appeals his convictions for attempted armed robbery and possession of a weapon during the commission of a violent crime and his aggregate sentence of twenty years' imprisonment. On appeal,

Bradley argues the trial court erred in refusing to grant a mistrial (1) when an investigator for the State testified she was "familiar" with Bradley and (2) after the trial court instructed the jury to find a "just result" in this case.  We affirm.

**FACTS/PROCEDURAL HISTORY**

In 2020, a Beaufort County grand jury indicted Bradley for first-degree criminal sexual conduct, first-degree burglary, attempted armed robbery, kidnapping, and possession of a weapon during the commission of a violent crime.   At trial, Victim testified she was sixty-five years old, lived with her parents on St. Helena Island, and cared for her mother, who had dementia.   Victim stated that on April 18, 2017, she was home when Bradley rang her doorbell and asked if she had any yard work for him to do.  According to Victim, she informed Bradley that she did not and went to close the door; however, Bradley pushed past her and demanded money.  She recounted how Bradley put a gun to her head, pulled her to the back of the house, and assaulted her.

Victim testified that after the assault, Bradley dragged her through the house and again demanded money.  Victim stated she informed Bradley that her "folks are retired [and] they don't have any money."  She testified Bradley got frustrated and ran out the door.  Victim recalled that after Bradley left, she called her sister and provided law enforcement with Bradley's description.

Investigator Jennifer Snider, with the Beaufort County Sheriff's Office (BCSO), testified she showed Victim a photo lineup and Victim selected Bradley's photo as the individual who assaulted her.  The State attempted to clarify with Snider the identity of the person Victim chose from the lineup and asked, "[l]aw enforcement identified that as Mr. Bradley?"   Snider responded affirmatively and stated, "I was familiar with Mr. Bradley, so I knew that was Mr. Bradley."

Bradley objected to Snider's comment.  The trial court sent the jury out and Bradley moved for a mistrial.  He argued that because Snider was a law enforcement officer, her comment "cast him in a light that is terribly unfavorable, prejudicial, [and] can't be cured by some instruction to the jury."  The trial court denied Bradley's motion, stating that Snider could have known Bradley "from all sorts of circumstances," other than her duties as a law enforcement officer.  The trial court noted, with agreement from Bradley, that Snider's comment was not solicited by the State.  The trial court found the comment did not rise "to the level of legal prejudice necessary to declare a mistrial."

Investigator Jason Malphrus, also with the BCSO, testified that after arriving at Victim's house on the day of the assault, he interviewed Victim's neighbors. Malphrus recalled he asked her neighbors if they knew a "young male, [that] may walk around and ask for money or ask to do yard work from time to time." He stated Bradley came up as a suspect during these interviews, and he created a photo lineup that included Bradley's picture. Malphrus testified he showed the lineup to Victim's father. According to Malphrus, Victim's father selected Bradley's photo and indicated Bradley had previously done yard work at his house.

Timothy French, also with the BCSO, stated he tested the clothing Victim wore the day of the assault for the presence of any male DNA. According to French, a semen stain on Victim's skirt contained DNA that matched Bradley's.

The State also introduced a recording of a jail phone call Bradley made to his sister. During the recording, Bradley admitted to his sister that he took Victim's phone but the police had not found it. Additionally, Bradley stated in the recording "yeah I did it, no need to lie" and confirmed to his sister that he broke into Victim's house after she asked, "you did break into their house?"

Bradley testified in his own defense and stated he had done yard work for Victim and her father on multiple occasions and he had been inside of their home "numerous times." According to Bradley, Victim called him on April 18, 2017, and told him to come over to pick up the rest of the money she owed him for "sweeping off her drive-through." He testified that when he arrived at the house, Victim let him inside, gave him some food, and asked him to have sex. He claimed Victim led him to the back bedroom, where he set his gun on the dresser. Bradley stated that Victim changed her mind about having sex, due to the presence of the gun, and told him to leave. He acknowledged that he then demanded money from Victim and looked through her father's possessions for any cash. Bradley recalled Victim became scared and started to pray. He testified that he found no money and left the house after Victim threatened to call the police. He asserted he was not guilty of burglary because he had Victim's consent to enter the house.

The trial court instructed the jury on reasonable doubt and the State's burden of proof. The trial court also reiterated the State's burden of proof during its instructions on the elements of each of the charges against Bradley. At the end of the trial court's charge, it stated that it charged the jury on the law "in order to help guide [them] to a just result in this case." Bradley objected to the trial court's jury charge and moved for a mistrial arguing the "just result" language used by the trial court lessened the State's burden of proof. The trial court denied Bradley's

motion and did not give a curative instruction.

The jury found Bradley guilty of attempted armed robbery and possession of a weapon during the commission of a violent crime. The trial court sentenced Bradley to concurrent terms of twenty years' imprisonment for attempted armed robbery and five years' imprisonment for possession of a weapon. This appeal followed.

## ISSUES ON APPEAL

I. Did the trial court err in refusing to declare a mistrial following Snider's testimony?

II. Did the trial court err in refusing to declare a mistrial following the jury instructions?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). The reviewing court "is bound by the trial court's findings of fact unless they are clearly erroneous." *Id.*

## LAW/ANALYSIS

### I. Snider's Comment

Bradley argues the trial court erred in refusing to declare a mistrial because Snider's comment improperly implied to the jury that Bradley had been involved in prior criminal acts. We disagree.

"The decision to grant or deny a mistrial is within the sound discretion of the trial court." *State v. Harris*, 382 S.C. 107, 117, 674 S.E.2d 532, 537 (Ct. App. 2009). "The trial court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law." *Id.* "A mistrial should only be granted when absolutely necessary, and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial." *Id.* "The granting of a motion for a mistrial is an extreme measure that should only be taken if an incident is so grievous that the prejudicial effect can be removed in no other way." *Id.*

In *State v. Moultrie,* Moultrie was convicted of possession of marijuana with intent

to distribute. 316 S.C. 547, 549, 451 S.E.2d 34, 36 (Ct. App. 1994). At trial, the arresting officer testified he knew Moultrie by "sight and name." *Id.* at 556, 451 S.E.2d at 40. Moultrie moved for a mistrial and argued the officer's testimony improperly portrayed him "as a person who had been the subject of police investigation in the past." *Id.* While this court determined the issue was not preserved for appellate review, it stated that "the challenged testimony was still admissible because it did not prejudice Moultrie." *Id.* "A trial court error must sufficiently prejudice the defendant in order to require reversal." *Id.* The court noted "[o]ther evidence far more damaging to Moultrie than [the arresting officer]'s casual statement that he knew Moultrie 'by sight and name' haunts the record." *Id.*

Similarly, in *State v. Thompson*, this court held that an officer's "single reference to warrants that existed against Thompson did not constitute sufficient prejudice to justify a mistrial." 352 S.C. 552, 561, 575 S.E.2d 77, 82 (Ct. App. 2003). "[T]here [was] no indication from [the officer]'s testimony that the warrants referred to unrelated charges or other bad acts committed by Thompson." *Id.* Additionally, "the jury heard testimony that a BOLO had been issued against Thompson . . . [t]hus, it would be reasonable to assume the jury inferred that the warrants related to the charged offenses." *Id.*

"Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result." *State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006). "Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained." *Id.* "Thus, an insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" *Id.* (quoting *State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989)).

Here, the trial court did not abuse its discretion by denying Bradley's motion for a mistrial. During Snider's testimony, she commented she "was familiar with Mr. Bradley, so [she] knew [it] was Mr. Bradley" who Victim identified from the photo lineup. Snider's comment was not improper. The comment did not explicitly implicate Bradley in a previous crime or portray him in a negative light because Snider did not state she knew Bradley from a prior bad act. Additionally, the jury could have inferred that Snider knew Bradley from working on this investigation or from circumstances apart from her duties as an officer. Furthermore, as conceded by Bradley, her comment was unsolicited by the State because the State's questioning was aimed at clarifying who Victim identified in the photo lineup. *See Thompson*, 352 S.C. at 561, 575 S.E.2d at 82 (holding an officer's "single reference to warrants that existed [against the defendant] did not constitute

sufficient prejudice to justify a mistrial" when there was no indication the warrants referred to unrelated charges or other prior bad acts and the jury heard testimony regarding an advisory to be on the lookout for the defendant).

However, even assuming Snider's comment was improper, Bradley was not prejudiced because the State introduced evidence that was far more damaging and his guilt was conclusively proven.  At trial, the State presented testimony of a photo lineup identification of Bradley by Victim, testimony of a separate identification by Victim's father that Bradley had asked for yard work previously, the presence of Bradley's semen and DNA on Victim's clothing, and a jail call recording in which  Bradley appeared to admit  to  breaking  into  Victim's house. Further, Bradley testified he demanded money from Victim and rifled through the house.  We find Bradley suffered no prejudice from Snider's comment and any error was harmless.  Therefore, the trial court did not abuse its discretion by denying Bradley's motion for a mistrial.  *See Moultrie*, 316 S.C. at 549, 451 S.E.2d at 36 ("A trial court error must sufficiently prejudice the defendant in order to require reversal."); *id.* (holding the arresting officer's comment that he knew Moultrie by sight and name "admissible because it did not prejudice Moultrie . . . [and o]ther evidence far more damaging to Moultrie than [the arresting officer]'s casual statement . . . haunts the record"); *Pagan*, 369 S.C. at 212, 631 S.E.2d at 267 ("Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result."); *id.* ("[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" (quoting *Bailey*, 298 S.C. at 5, 377 S.E.2d at 584)).

## II.    Jury Instructions

Bradley argues the trial court erred in refusing to declare a mistrial after it instructed the jury to find a "just result."  We disagree.

"The granting of a motion for a mistrial is an extreme measure that should only be taken if an incident is so grievous that the prejudicial effect can be  removed in no other way."  *Harris*, 382 S.C. at 117, 674 S.E.2d at 537.  "In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct. App. 2003).   "If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading  do  not constitute reversible error."  *Id.* at 318, 577 S.E.2d at 463–64.   "A jury charge which is substantially correct and covers the law does not require reversal."   *Id.* at 319, 577

S.E.2d at 464. "[A] trial [court] should refrain from informing the jury, whether through comments or through a charge on the law, that its role is to search for the truth, or to find the true facts, or to render a just verdict." *State v. Beaty*, 423 S.C. 26, 34, 813 S.E.2d 502, 506 (2018). "These phrases could be understood to place an obligation on the jury, independent of the burden of proof, to determine the circumstances surrounding the alleged crime and from those facts alone render the verdict the jury believes best serves its perception of justice." *Id.*

In *State v. Aleksey*, the trial court instructed the jury that its job was to "seek the truth." 343 S.C. 20, 26, 538 S.E.2d 248, 251 (2000). Our supreme court observed, "the 'seek' language here did not appear in either the reasonable doubt or circumstantial evidence charges, but in the instructions on juror credibility." *Id.* at 27, 538 S.E.2d at 251–52. Our supreme court did not reverse the defendant's conviction and held the improper "remarks were prefaced by a full instruction on reasonable doubt and followed by an additional exhortation to bear in mind the State's heavy burden of proof." *Id.* at 29, 538 S.E.2d at 253. The court determined "the instruction as a whole properly conveyed the law to the jury and there [was] not a reasonable likelihood the jury applied the challenged instruction in a manner inconsistent with the burden of proof beyond a reasonable doubt." *Id.* at 29, 538 S.E.2d at 253.

Similarly, in *State v. Needs*, our supreme court held "the trial [court]'s circumstantial evidence charge was erroneous because it instructed jurors to seek a reasonable explanation other than the guilt of the accused." 333 S.C. 134, 154, 508 S.E.2d 857, 867 (1998). Nonetheless, the court concluded the improper instruction "was harmless error beyond a reasonable doubt because the trial judge instructed jurors twenty-six other times throughout his charge that the State has the burden of proving a defendant guilty beyond a reasonable doubt." *Id.*

Here, the trial court did not abuse its discretion by denying Bradley's motion for a mistrial. Although the trial court improperly instructed the jury, "I have now charged you on the law in order to help guide you to a just result in this case," we find any error was harmless. *See Beaty*, 423 S.C. at 34, 813 S.E.2d at 506 ("[A] trial [court] should refrain from informing the jury, whether through comments or through a charge on the law, that its role is to search for the truth, or to find the true facts, or to render a just verdict."); *id.* ("These phrases could be understood to place an obligation on the jury, independent of the burden of proof, to determine the circumstances surrounding the alleged crime and from those facts alone render the verdict the jury believes best serves its perception of justice."); *Harris*, 382 S.C. at 117, 674 S.E.2d at 537 ("The granting of a motion for a mistrial is an extreme

measure that should only be taken if an incident is so grievous that the prejudicial effect can be removed in no other way.").  Bradley was not prejudiced by the instruction because although the comment was at the very end of the charge, it did not occur during the trial court's reasonable doubt instruction and it was preceded by instructions on reasonable doubt and the State's burden of proof.  *See Aleksey*, 343 S.C. at 27, 538 S.E.2d at 251–52 (observing that "the 'seek' language in that case did not appear in either the reasonable doubt or circumstantial evidence charges, but in the instructions on juror credibility"); *id.* at 29, 538 S.E.2d at 253 (holding the trial court's improper "remarks were prefaced by a full instruction on reasonable doubt and followed by an additional exhortation to bear in mind the State's heavy burden of proof").  The trial court further emphasized the State's burden of proof throughout its charge when it instructed the jury on the elements of each indicted crime.  *See Needs*, 333 S.C. at 154, 508 S.E.2d at 867 ("[T]he trial [court]'s circumstantial evidence charge was erroneous because it instructed jurors to seek a reasonable explanation other than the guilt of the accused."); *id.* ("However, we conclude it was harmless error beyond a reasonable doubt because the trial judge instructed jurors twenty-six other times throughout his charge that the State has the burden of proving a defendant guilty beyond a reasonable doubt."); *Aleksey,* 343 S.C. at 28-29, 538 S.E.2d at 252 (holding "the instruction as a whole properly conveyed the law to the jury and there [was] not a reasonable likelihood the jury applied the challenged instruction in a manner inconsistent with the burden of proof beyond a reasonable doubt").

**CONCLUSION**

Based on the foregoing, Bradley's convictions are

**AFFIRMED.**[1]

**WILLIAMS, C.J., and HEWITT and VERDIN, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.